NO. 07-07-0292-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 31, 2009
_____

MIKE BERKLEY, KATHRYN BERKLEY, and THOMAS HARTMAN,

Appellants

v.

RAILROAD COMMISSION OF TEXAS,

Appellee
_____

FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN05-004200; HON. SCOTT H. JENKINS, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Mike and Kathryn Berkley and Thomas Hartman (referred to by name or collectively as the Land Owners) appeal from the trial court's judgment affirming an order of the Texas Railroad Commission (the Commission). That order approved the application of L & R Tank Trucks for authority to use the G. Lynch No. 1 well in the Sledge Field, Montague County, Texas, to inject and dispose of up to 3000 barrels of salt water per day between 2,762 and 2,990 feet below the surface. The Berkleys and Hartman own the surface and

mineral rights in lands adjoining the location of the injection well and assert nine issues in effort to reverse the trial court's judgment. They involve claims of trespass and the unconstitutional taking of property, the failure to abide by rules of procedure, and the existence of sufficient evidence to support the Commission's ruling. For reasons to be explained, we affirm the judgment.

*Standard of Review*

Appellate courts are afforded a limited review of agency orders. This is so because we accord substantial deference to the agency's expertise. *Railroad Comm'n v. Torch Operating Co.,* 912 S.W.2d 790, 792 (Tex. 1995). The circumstances allowing us to reverse or alter those orders are limited to situations wherein substantial rights have been affected by the decision due to the order being in violation of constitutional or statutory law or the decision exceeding the agency's statutory authority, arising through unlawful procedure, being affected by other errors of law, lacking the support of substantial evidence, or being arbitrary or capricious and consequently an abuse of discretion. TEX. GOV'T CODE ANN. §2001.174(2) (Vernon 2008). Furthermore, we do not look to the correctness of the order but only to its reasonableness. *City of El Paso v. Pub. Util. Comm'n,* 883 S.W.2d 179, 185 (Tex. 1994). That is, the standard of review is not whether the agency reached what we would deem the correct decision but whether the record contains some reasonable basis for the decision made. *Id.* So, we do not re-weigh the evidence, *see* TEX. GOV'T CODE ANN. §2001.174 (Vernon 2008), but rather assess whether substantial evidence (*i.e.* more than a scintilla) supported the ruling. *Railroad Comm'n v.*

2

*Torch Operating Co.,* 912 S.W.2d at 792.  With that said, we turn to the arguments before us.

   *Trespass and Unconstitutional Taking*

   As previously alluded to, the Land Owners assert that the Commission's ruling was wrong because it violated both the laws of trespass and the constitutional restrictions against taking property without just compensation.  This supposedly was so because the order was nothing short of state action granting L & R Tank Trucks the authority to trespass upon and take their subsurface property interests.  We disagree.

   That the decision does not authorize a trespass was established in the opinion of *FPL Farming Ltd. v. Texas Natural Resource Conservation Comm'n,* No. 03-02-0477-CV, 2003 Tex. App. LEXIS 1074 (Tex. App.–Austin, February 6, 2003, pet. denied) (not designated for publication).  In *FPL Farming*, like here, an applicant was granted a permit to dispose of water by injecting it into an existing well located near the property of FPL Farming.  And, because the waste water would migrate into the subsurface strata of realty owned by FPL, the latter also argued that the decision constituted a governmentally approved trespass and allowed the unconstitutional taking of property.  The claims were rejected because 1) the land owner failed to show that his use and enjoyment of the property would be impaired, 2) no evidence illustrated that the injected waters would permanently occupy the subsurface property of the land owner, and 3) securing a permit did not constitute a public taking, *i.e.* did not authorize any injury to person or property or authorize the invasion of another's property rights.  *Id.* at *11-16; *accord* TEX. WATER CODE ANN. §27.104 (Vernon 2008) (stating that receiving a permit under Chapter 27 of the Water

3

Code "does not relieve [the recipient] from any civil liability"); 30 TEX. ADMIN. CODE §305.122(c) (2009) (stating that the issuance of a permit does not authorize any injury to persons or property or an invasion of other property rights, or any infringement of state or local law or regulations). We find this outcome logical and authoritative.

We take from *FPL Farming*, the foregoing statutes and regulations, and other authorities cited below that the permit process has limited effect. Specifically, securing a permit does not immunize the recipient from the consequences of its actions if those actions affect the rights of third parties. Nor does it authorize the recipient to act with impunity *viz* third parties. Rather, obtaining a permit simply means that the government's concerns and interests, at the time, have been addressed; so, it, as a regulatory body, will not stop the applicant from proceeding under the conditions imposed, if any. Indeed, the Texas Supreme Court has described the issuance of a permit to drill as a mere "negative pronouncement" that "grants no affirmative rights to the permittee to occupy the property." *Magnolia Petroleum Co. v. Railroad Comm'n,* 141 Tex. 96, 170 S.W.2d 189, 191 (1943). "It merely removes the conservation laws and regulations as a bar . . . ." *Id.* Third parties remain free to protect their rights and property, however. *See Coastal Oil & Gas Corp. v. Garza Energy Trust,* 268 S.W.3d 1, 12 (Tex. 2008) (stating that whether subsurface fracing gives rise to an action for trespass is decided by the courts, not the agency considering an application); *Gray v. Helmerich & Payne, Inc.*, 834 S.W.2d 579, 582 (Tex. App.–Amarillo 1992, writ denied) (stating that the receipt of a drilling permit does not undertake to adjudicate property rights). Any dispute regarding the rights of the permittee in relationship

4

to others is left for the courts, not the Commission, to resolve. *Magnolia Petroleum Co. v. Railroad Comm'n*, 170 S.W.2d at 100.

The situation is much like getting a driver's license. While some may think that the license allows them to drive upon a neighbor's lawn, it does not. The home owner may still undertake effort to protect his yard or recover for damages suffered. Nor does the license allow them to ignore other laws and restrictions whether related to or unrelated to driving.

In sum, obtaining the permit at bar neither took property from the Land Owners nor authorized a trespass. Thus, we overrule the issues positing otherwise.

*Findings of Fact and Conclusions of Law*

The Land Owners next complain of the trial court's failure to execute findings of fact and conclusions of law. That matter is moot since they not only recognized that the remedy is to abate and remand the appeal so the missing information can be filed, but also affirmatively waived such relief. Thus, we do not address the issue and, instead, overrule it.

*Order in Excess of Statutory Authority*

Next, the Land Owners assert that the Commission's order exceeds its statutory authority. This is purportedly so because the order permitted a trespass and the Commission issued it without proof that the well furthered the public interest. We overrule the issue.

Given our previous discussion about and resolution of the trespass debate, we see no need to address the topic again. As for the other argument, in determining whether to issue a permit for an injection well, the Commission is obligated to consider, among other

5

things, whether granting the application lies within the public's interest. TEX. WATER CODE ANN. §27.051(b)(1) (Vernon 2008). Here, the Commission found that the use of the well for injection purposes was within the public's interest because 1) there was a need for additional disposal capacity in the Barnett Shale Field, 2) new wells in the field required large fracture stimulations which used water, 3) the commercial disposal well would serve to reduce costs associated with the disposal of fracture fluids and salt water, and 4) the surface injection pressure is appropriate and will not fracture the formation. These findings arose from evidence presented at the hearing. Also tendered at the hearing was evidence suggesting that issuing a permit would not comport with public interest. For instance, the data appearing of record indicates that a hill by the tract upon which the well is located could cause dangerous traffic conditions to arise and that the presence of large trucks traveling to the site could interfere with the use and enjoyment of neighboring lands. Admittedly, safety concerns are indicia that should be considered by the Commission when assessing public interests. *Texas Citizens for a Safe Future & Clean Water v. Railroad Comm'n,* 254 S.W.3d 492, 502 (Tex. App.–Austin 2007, pet. filed). Yet, the presence of such evidence alone does not permit us to overturn the decision if the latter nonetheless enjoys the support of substantial evidence. Again, under the pertinent standard of review, we do not decide whether the ruling was correct but rather if it was reasonable given the evidence and law. Nor are we entitled to re-weigh the evidence. So, because evidence appears of record supporting the Commission's ruling and that ruling comports with the law, we cannot alter it.

Accordingly, we overrule the issues before us and affirm the judgment.


Brian Quinn
Chief Justice


Campbell, J., concurs in result.