**RAILROAD COMMISSION OF TEXAS and Pioneer Exploration, Ltd., Petitioners,**

v.

**TEXAS CITIZENS FOR A SAFE FUTURE AND CLEAN WATER and James G. Popp, Respondents.**

No. 08–0497.

Supreme Court of Texas.

Argued April 14, 2010.

Decided March 11, 2011.

Rehearing Denied May 27, 2011.

Greg W. Abbott, Jeffrey L. Rose, Attorney General of Texas, David Preister, George Thomas Bohl, Jeffee L. Palmer, Office of the Attorney General, Clarence Andrew Weber, First Assistant Attorney General, Barbara Bryant Deane, Assistant Attorney General, Daniel L. Geyser, Asst. Solicitor General, Office of the Attorney General of Texas, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Kent C. Sullivan, Austin TX, James C. Ho, Gibson Dunn & Crutcher LLP, Dallas TX, for Railroad Commission of Texas.

David Frederick, Marisa Perales, Lowerre, Frederick, Perales Allmon & Rockwell, Austin TX, for Texas Citizens for a Safe Future and Clean Water.

David B. Gross, Gross & Nelson, Austin TX, for Pioneer Exploration, Ltd.

Karen L. Watkins, W. Timothy George, McGinnis Lochridge & Kilgore, L.L.P., Austin TX, for Amicus Curiae Texas Oil & Gas Assoc.

Mark A. Mayfield, Gardere Wynne Sewell LLP, Austin TX, for Amicus Curiae Pinnergy.

Patrick Joseph Pearsall, Clark, Thomas & Winters, Austin TX, for Amicus Curiae Texas Pipeline Association.

Edmond R. McCarthy Jr., Jackson Sjober McCarthy & Wilson LLP, for Amicus Curiae TX Water Conservation, et al.

Gabriel Enrique Lopez, Texas Assoc'n of Realtors, Austin TX, for Amicus Curiae Texas Association of Realtors.

Justice GUZMAN delivered the opinion of the Court, joined by Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice JOHNSON.

The Texas Water Code requires the Railroad Commission of Texas to weigh the "public interest" in the permitting of proposed oil and gas waste injection wells. In a ruling, the Commission declined to consider traffic-safety factors in its public interest inquiry. We determine whether the Commission's interpretation of "public interest" is entitled to judicial deference. Because we conclude the Commission's construction of the phrase was reasonable and in accord with the plain language of the statute, we hold the court of appeals erred in not deferring to the Commission's interpretation. We therefore reverse the court of appeals' judgment and render judgment for the petitioners in accordance with the trial court's original judgment.

## I. Background

The Barnett Shale is a large, prolific oil and gas field lying beneath several counties, including Wise County, in north Texas. As in other shale formations, wells in the Barnett Shale require fracture stimulation in order to produce. Fracing a well entails pumping large volumes of water and sand into reservoir rock, which then mixes with saline formation water and must be flowed back out of the well before production can begin. A company fracing a well must dispose of the resulting waste. Most companies do so by injecting the waste into subsurface zones which are naturally saline environments, usually in old wells converted to injection wells.[1] A com-

---

1. The Water Code defines "injection well" as "an artificial excavation or opening in the ground made by digging, boring, drilling, jetting, driving, or some other method, and used to inject, transmit, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum; or a well initially drilled to produce oil and gas which is used to transmit, inject, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum; or a well used for the injection of any other fluid; but the term does

pany seeking to convert a well to an injection well for oil and gas waste must apply to the Commission for a permit. TEX. WATER CODE § 27.031.

In granting an injection well permit, the Commission is required to make the following findings:

(1) that the use or installation of the injection well *is in the public interest;*

(2) that the use or installation of the injection well will not endanger or injure any oil, gas, or other mineral formation;

(3) that, with proper safeguards, both ground and surface fresh water can be adequately protected from pollution; and

(4) that the applicant has made a satisfactory showing of financial responsibility if required by Section 27.073.

*Id.* § 27.051(b) (emphasis added). The instant dispute centers on the requisite public interest finding in section 27.051(b)(1).

Pioneer Exploration, Ltd. (Pioneer) applied to the Commission for a permit to convert an existing well into an injection well for the disposal of oil and gas waste. But several Wise County residents living near the well—respondents Texas Citizens for a Safe Future and Clean Water and James Popp (collectively, Texas Citizens)—opposed the proposed injection well, necessitating a contested administrative hearing before Commission hearing examiners. At the hearing, Texas Citizens voiced a variety of concerns about the well's environmental soundness, but also presented arguments and evidence related to traffic-safety issues. Specifically, Texas

Citizens argued that large trucks used to haul waste water to the well would damage nearby roads and pose a threat to area residents who use the roads, and thus would not serve the "public interest" under section 27.051(b)(1).[2] Pioneer did not rebut this traffic-safety evidence. Instead, Pioneer essentially argued that the production of natural gas is in the public interest.

The hearing examiners recommended issuing the permit. In the examiners' findings of fact and conclusions of law, adopted by the Commission in its final order, the examiners found

[u]se of the proposed disposal well is in the public interest because it will provide needed additional disposal capacity and an economical means of disposing of produced salt water from completed wells in the rapidly expanding Barnett Shale Field Area, thereby increasing ultimate recovery from these wells and preventing waste. The safe and proper disposal of produced saltwater serves the public interest.

. . .

The use of the proposed disposal well is in the public interest pursuant to Sec[tion] 27.051 of the Texas Water Code.

In the proposal for decision, the examiners additionally concluded the "production of hydrocarbons for use by the people of Texas and industry serves the public interest." In addressing Texas Citizens' traffic-safety evidence, the examiners stated the Commission "does not have jurisdiction

---

not include any surface pit, surface excavation, or natural depression used to dispose of industrial and municipal waste or oil and gas waste." TEX. WATER CODE § 27.002(11).

2. Texas Citizens presented evidence that (1) the small country gravel roads leading to the well are too narrow (about sixteen feet wide)

for large truck traffic, (2) the trucks would damage the roads, and (3) the trucks would pose a safety threat to children and other pedestrians who frequently use the roads. The evidence at the hearing demonstrated that up to fifty trucks per day could travel the roads at all hours of the day and night.

to regulate truck traffic on the state's roads and highways." The examiners concluded that, while they empathized with Texas Citizens' concerns about property values and quality of life, Pioneer had met its burden of proof on the public interest finding.[3]

The Commission adopted the examiners' findings of fact and conclusions of law and approved Pioneer's application. Texas Citizens appealed to the trial court, which affirmed the Commission's order. The court of appeals, however, reversed, holding that the Commission abused its discretion in interpreting the "public interest" inquiry too narrowly by solely focusing on the proposed well's effect on the conservation of natural resources.[4] *See* 254 S.W.3d 492, 503. The court of appeals remanded the case to the Commission to "reconsider its public interest determination, using a broader definition of 'the public interest,' which includes public-safety concerns where evidence of such concerns has been presented." *Id.* The Commission moved for rehearing en banc, which the court of appeals denied in a per curiam opinion with two justices writing separately, concurring in the denial. *See id.* at 503–07. The Commission and Pioneer petitioned this Court for review of the court of appeals' holding on the "public interest" issue.

## II. Standard of Review

The parties disagree on the contours of the precise issue in dispute, which is a matter we initially address. The Commission contends this case fundamentally concerns the need for court deference to an agency's interpretation of what it argues is an ambiguous statute. If an agency's construction of an ambiguous statute it is charged with administering is reasonable, the Commission urges, it is improper for a court to overturn that interpretation.[5] Texas Citizens counters that the core issue is not an agency's interpretation of a statutory term or even the proper definition of "public interest," but rather whether that phrase may include factors beyond the production of oil and gas, requiring the Commission to weigh all evidence offered in support of or against the public interest finding.

We agree with the Commission that this case turns on a matter of statutory construction—specifically, the definition of the term "public interest"—and therefore the proper level of deference a court must grant the Commission's interpretation of that term. As Texas Citizens asserts, the Commission's order does not expressly define the term "public interest." Rather, the order—by way of adopting the examiners' findings of fact and conclusions of law—states that the well is in the public interest because of its positive effect on increased productivity from wells in the Barnett Shale field. But although the

3. In their findings of fact and conclusions of law, the hearing examiners also addressed the other statutory findings required for the Commission's grant of a permit, finding Pioneer had posted required financial assurance, and concluding that the proposed injection well would not endanger oil, gas, or geothermal resources or cause pollution of surface or fresh water. *See id.* § 27.051(b)(2)–(4).

4. Texas Citizens also raised procedural due process and notice arguments in the court of appeals. The court of appeals affirmed the Commission's order on both of these grounds.

Texas Citizens does not appeal these rulings to this Court.

5. Pioneer also argues that the Court must defer to the Commission's reasonable interpretation of the statute. However, Pioneer primarily contends that, under the substantial evidence rule, the Commission did not abuse its discretion because substantial evidence in the record supported the Commission's ruling and the ruling comports with the law. *See* Tex. Gov't Code § 2001.174.

Commission's final order does not explicitly adopt the examiners' statements concerning Texas Citizens' traffic-safety evidence, the Commission has made clear, throughout these proceedings, that it does not view its public interest analysis as an open-ended inquiry including public-safety issues, but rather one limited to matters related to oil and gas production. The crux of the dispute, then, is whether the term "public interest" in section 27.051(b) of the Water Code is a broad, open-ended term, encompassing any conceivable subject potentially affecting the public, or a more narrow term that does not include a subsidiary issue like traffic safety but is limited to matters related to oil and gas production.

The Utilities Code generally requires a court to review a decision of the Commission under a substantial evidence standard. *See* TEX. UTIL. CODE § 105.001(a) ("Any party to a proceeding before the railroad commission is entitled to judicial review under the substantial evidence rule."). This standard requires a court to reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are, among other things, not reasonably supported by substantial evidence, or are "characterized by abuse of discretion." TEX. GOV'T CODE § 2001.174(2).

■ The gravamen of this dispute, however, is a governmental agency's construction of a statute it is charged with administering. The construction of a statute is a question of law we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex.2008); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007). We have long held that an agency's interpretation of a statute it is charged with enforcing is entitled to "serious consideration," so long as the construction is reasonable and does not conflict with the statute's language. We have stated this principle in differing ways, but our opinions consistently state that we should grant an administrative agency's interpretation of a statute it is charged with enforcing some deference.[6]

6. *See, e.g., First Am. Title Ins. Co.*, 258 S.W.3d at 632 (explaining that we give "serious consideration" to an agency's construction of its statute and should uphold the agency's interpretation, so long as it is reasonable and does not contradict the statute's plain language); *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 623 (Tex.2007) (observing that an agency's construction of a statute it is charged with enforcing is entitled to serious consideration, as long as the construction is reasonable and does not contradict the statute's plain language); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747–48 (Tex.2006) (recognizing that courts give "some deference" to an agency regulation—including an agency's formal opinion adopted after a formal proceeding—concerning a statute, so long as the language at issue is ambiguous and the agency's construction reasonable); *TXU Elec. Co. v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 275, 286 (Tex.2001) (concluding that the Court gives "some deference" to the Public Utility Commission's interpretation of a statute if it is reasonable and does not conflict with the statute's language); *Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex.1998) (noting that the contemporaneous construction of a statute by a governmental agency charged with its enforcement is entitled to "great weight"); *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex.1994) (recognizing that an administrative agency's construction of a statute that it is charged with enforcing is entitled to "serious consideration," so long as the construction is reasonable and does not contradict the statute's plain language); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993) (same); *Tex. Emp'rs Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 395 (1946) (observing that " 'the practical interpretation of [an] Act by the agency charged with the duty of administering it is entitled to the highest respect from the courts' ") (quoting *Indus. Accident Bd. v. Glenn*, 144 Tex. 378, 190 S.W.2d 805, 809 (1945) (Simpson, J., dissenting));

Citing the Supreme Court's seminal case on judicial deference, the Commission argues that state law principles regarding judicial deference to an agency's interpretation of a statute it implements are closely aligned to federal-court precedent. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under the *Chevron* doctrine, a federal court embarks on a two-part test in determining whether to defer to an agency's construction of a statute. First, the court must consider whether Congress has "directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If Congress's intent is clear and unambiguous under the language of the statute, that is the end of the inquiry. *See id.* at 842–43, 104 S.Ct. 2778. If the statute is silent or ambiguous, however, the court does not impose its own construction of the statute, but rather defers to the agency's interpretation so long as it is reasonable. *See id.* at 843, 104 S.Ct. 2778. The *Chevron* doctrine applies to a formal agency construction of a statute, as in an order following a formal adjudication or a regulation. *See U.S. v. Mead Corp.,* 533 U.S. 218, 229–30, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Informal interpretations, such as advisory opinions, may merit some deference, as articulated in *Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but not the high deferential standard afforded in *Chevron. See Mead,* 533 U.S. at 234–35, 121 S.Ct. 2164; *see generally* Bradley Lipton, *Accountability, Deference, and the* Skidmore *Doctrine,* 119 YALE L.J. 2096 (2010).

■ We have never expressly adopted the *Chevron* or *Skidmore* doctrines for our

consideration of a state agency's construction of a statute, but we agree with the Commission that the analysis in which we engage is similar. In our "serious consideration" inquiry, we will generally uphold an agency's interpretation of a statute it is charged by the Legislature with enforcing, " 'so long as the construction is reasonable and does not contradict the plain language of the statute.' " *First Am. Title Ins. Co.,* 258 S.W.3d at 632 (quoting *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993)). As we observed in *Fiess,* this deference is tempered by several considerations:

> It is true that courts give some deference to an agency regulation containing a reasonable interpretation of an ambiguous statute. But there are several qualifiers in that statement. First, it applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions [in a court brief]. Second, the language at issue must be ambiguous; an agency's opinion cannot change plain language. Third, the agency's construction must be reasonable; alternative *unreasonable* constructions do not make a policy ambiguous.

*Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 747–48 (Tex.2006).

■ Here, the examiners' opinion, and the Commission's final order, were formally adopted after an adjudication. Accordingly, we will review the Commission's interpretation of "public interest" and uphold it if it is reasonable and in accord with the plain language of the statute. *See First Am. Title Ins. Co.,* 258 S.W.3d at 632.[7]

---

*Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944) (observing that courts will ordinarily adopt and uphold a construction of a statute by the executive officer or department charged with its administration, if the

statute is ambiguous and the construction reasonable).

7. Because we evaluate the contours of "public interest" as made in formal Commission

## III. Analysis

### A. Injection Well Act

In 1961, the Legislature enacted the Injection Well Act (the Act), which governs the permitting process for all injection wells in the state.[8] The Act—currently codified in Chapter 27 of the Water Code—distinguishes between two types of injection wells, those used to dispose of "industrial and municipal waste," and those used to dispose of "oil and gas waste." Tex. Water Code § 27.002(5)–(6). Under the Act, the Commission has jurisdiction over injection wells used to dispose of oil and gas waste, see id. §§ 27.031, 27.051(b), while the Texas Commission for Environmental Quality (TCEQ) has jurisdiction over other types of injection wells, including those used for the disposal of industrial and municipal waste, see id. §§ 27.011, 27.051(a).

The distinction between the jurisdictions of these two agencies is important because the statute governing the issuance of permits differs as to factors each agency must consider in granting a permit. Both statutes require the agencies to determine "that the use or installation of the injection well is in the public interest," id. § 27.051(a)(1), (b)(1), but the TCEQ is additionally required to find that an applicant for a hazardous waste well not located in an industrial area has made reasonable effort to ensure that any burden of the proposed injection well on public roadways will be minimized or mitigated, id. § 27.051(a)(6).[9] The statute does not require the Commission to make this public roadway determination. Originally, the Act required both agencies to consider the same factors in determining whether to issue a permit, but a 1987 amendment added the public roadway requirement for the TCEQ's consideration in certain situations but did not enact a similar requirement for the Commission.[10]

The Act further requires the TCEQ to consider specific criteria—including the compliance history of the applicant, whether an alternative to the well is reasonably available, and, in some circumstances,

---

statements following an adjudication, we need not determine whether some lesser level of deference would be warranted if the statements were made informally, as expressed in *Skidmore*. *See Skidmore*, 323 U.S. at 139–40, 65 S.Ct. 161.

**8.** *See* Act of April 5, 1961, 57th Leg., R.S., ch. 82, 1961 Tex. Gen. Laws 159.

**9.** Specifically, the TCEQ is required to make the following findings in granting an injection well permit:

(1) that the use or installation of the injection well is in the public interest;

(2) that no existing rights, including, but not limited to, mineral rights, will be impaired;

(3) that, with proper safeguards, both ground and surface fresh water can be adequately protected from pollution;

(4) that the applicant has made a satisfactory showing of financial responsibility if required by Section 27.073 of this code;

(5) that the applicant has provided for the proper operation of the proposed hazardous waste injection well;

(6) that the applicant for a hazardous waste injection well not located in an area of industrial land use has made a reasonable effort to ensure that the burden, if any, imposed by the proposed hazardous waste injection well on local law enforcement, emergency medical or fire-fighting personnel, or public roadways, will be reasonably minimized or mitigated; and

(7) that the applicant owns or has made a good faith claim to, or has the consent of the owner to utilize, or has an option to acquire, or has the authority to acquire through eminent domain, the property or portions of the property where the hazardous waste injection well will be constructed. *Id.* § 27.051(a).

**10.** *See* Act of June 1, 1987, 70th Leg., R.S., ch. 638, § 5, 1987 Tex. Gen. Laws 2433, 2434.

whether the applicant will maintain sufficient insurance—in its public interest inquiry, though the Act specifically states the TCEQ is not limited to consideration of these factors. *Id.* § 27.051(d).[11] The Act provides no parallel provision enumerating the types of public interest considerations the Commission must evaluate.

The Act declares a purpose of protecting freshwater supplies in this state, as provided in its statement of policy and purpose:

> It is the policy of this state and the purpose of this chapter to maintain the quality of fresh water in the state to the extent consistent with the public health and welfare and the operation of existing industries, taking into consideration the economic development of the state, to prevent underground injection that may pollute fresh water, and to require the use of all reasonable methods to implement this policy.

*Id.* § 27.003.

Beyond this statement of purpose, the Act, as a whole, details procedures related to the protection of natural resources, as well as the technical processes involved, in the permitting of an injection well. The chapter prescribes no requirements for the Commission to engage in any sort of process or deliberation involving matters that do not involve oil and gas production and the protection of natural resources.

With this statutory framework in mind, we turn to the Commission's construction of "public interest" to determine if it is reasonable and in harmony with the language of the statute.

## B. The Commission's Interpretation of "Public Interest"

Texas Citizens argues, and the court of appeals held, that "public interest" is a broad term, intended by the Legislature to encompass any number of subsidiary issues that might impact the public interest. Texas Citizens asserts two primary arguments in favor of its interpretation: (1) the term is inherently an amorphous, unlimited term, encompassing all possible factors that might affect the public; and (2) since other factors in section 27.051(b) require the Commission to consider matters pertaining to the production of oil and gas and the prevention of fresh water pollution, it must follow that the "public interest" factor is intended to encompass something else.

---

11. Texas Water Code § 27.051(d) provides:
 The [TCEQ], in determining if the use or installation of an injection well is in the public interest under Subsection (a)(1), shall consider, but shall not be limited to the consideration of:
 (1) compliance history of the applicant and related entities under the method for evaluating compliance history developed by the [TCEQ] under Section 5.754 and in accordance with the provisions of Subsection (e);
 (2) whether there is a practical, economic, and feasible alternative to an injection well reasonably available; and
 (3) if the injection well will be used for the disposal of hazardous waste, whether the applicant will maintain sufficient public liability insurance for bodily injury and property damage to third parties that is caused by sudden and non-sudden accidents or will otherwise demonstrate financial responsibility in a manner adopted by the [TCEQ] in lieu of public liability insurance. A liability insurance policy which satisfies the policy limits required by the hazardous waste management regulations of the [TCEQ] for the applicant's proposed pre-injection facilities shall be deemed "sufficient" under this subdivision if the policy:
 (A) covers the injection well; and
 (B) is issued by a company that is authorized to do business and to write that kind of insurance in this state and is solvent and not currently under supervision or in conservatorship or receivership in this state or any other state.
 *Id.*

Both of these arguments are at least somewhat reasonable, though both have flaws. An argument can be asserted—as Pioneer does—that section 27.051(b)(2) and (3) specifically address the need to produce oil and gas in a manner that does not harm oil, gas, and mineral reserves and protects fresh water supplies, while the public interest factor contemplates whether the proposed well will ultimately positively impact the production of oil and gas. The "amorphousness" of the phrase "public interest" further cuts against Texas Citizens' argument that its interpretation is the only reasonable interpretation of the provision—the statute is, as this dispute demonstrates, subject to more than one interpretation. The greater deficit in Texas Citizens' arguments, though, is that while Texas Citizens' position has some merit, the Commission's interpretation does too.

It is precisely when a statutory term is subject to multiple understandings that we should defer to an agency's reasonable interpretation. *See Fiess*, 202 S.W.3d at 747–48. Because we only require an agency's interpretation of a statute it is charged with administering to be reasonable and in accord with the statute's plain language, we need not consider whether the Commission's construction is the only—or the best—interpretation in order to warrant our deference. In determining whether the Commission's interpretation is reasonable, we begin with the language in the statute itself.

### 1. Statutory Scheme

 The term "public interest" in section 27.051(b)(1) is undefined. We ordinarily construe a statute so as to give

effect to the Legislature's intent as expressed in its plain language. *Duenez*, 237 S.W.3d 680 at 683. " 'If the statute is clear and unambiguous, we must apply its words according to their common meaning.' " *First Am. Title Ins. Co.*, 258 S.W.3d at 631 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006)).

As discussed above, the phrase "public interest" is anything but clear and unambiguous. There are several factors, however, lending support to the Commission's determination that its consideration of the public interest is intended to be a narrow one precluding consideration of traffic-safety concerns.

 First, the Legislature's addition of a traffic-related inquiry to the TCEQ's required findings—amended more than twenty-five years after the Act was initially enacted—weighs in favor of the Commission's interpretation. We generally avoid construing individual provisions of a statute in isolation from the statute as a whole. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003). We therefore " 'read the statute as a whole and interpret it to give effect to every part.' " *Id.* (quoting *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998) (per curiam)). When the Legislature uses a word or phrase in one portion of a statute but excludes it from another, the term should not be implied where it has been excluded. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995).[12] Had the Legislature intended for the Commission and the TCEQ to entertain traffic-related evidence in their public interest inquiries, it would not have needed to amend the statute to expressly require

---

**12.** *See also Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi,* 13 S.W.3d 767, 769 (Tex.2000) (per curiam) ("When the Legislature has employed a term in one section of a statute and excluded it in another, we presume that the

Legislature had a reason for excluding it."); *Shumake,* 199 S.W.3d at 287 (observing statutory construction rule of giving effect to all words and not treating any statutory language as surplusage).

the TCEQ to consider a well's impact on traffic in certain situations. *See Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."); *see also Leland v. Brandal,* 257 S.W.3d 204, 208 (Tex.2008).[13]

 Second, under the principle of *ejusdem generis,* we have warned against expansively interpreting broad language where it is immediately preceded by narrow and specific terms. *Marks v. St. Luke's Episcopal Hosp.,* 319 S.W.3d 658, 663 (Tex.2010). "[W]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex.2003). Given that the surrounding statutory scheme—including the other three factors the Commission is specifically required to consider in evaluating a permit application—exclusively concern matters related to the production of oil and gas, it is reasonable for the Commission to decline to consider the completely unrelated inquiry of traffic safety in weighing the public interest.

Third, the Act's statement of purpose expressly declares the purpose of the Act is to "maintain the quality of fresh water in the state to the extent consistent with the public health and welfare and the operation of existing industries." Tex. Water Code § 27.003. This narrow policy statement declines to promote a purpose of protecting public safety except where natural resources are concerned.

Finally, in the portions of the Act where the Legislature intends for the TCEQ or the Commission to evaluate a particular factor in considering the public interest, it says so. The Legislature requires the TCEQ to examine specific factors in its public interest inquiry. *See id.* § 27.051(d). Texas Citizens argues that section 27.051(d) does not limit the TCEQ's consideration of these factors in its public interest investigation. *See id.* (providing that the TCEQ "shall not be limited to the consideration of" the enumerated public interest factors). But the Legislature does not require the TCEQ to consider any particular additional factor either. *Id.* In contrast, there is no statutory directive for the Commission to consider matters related to traffic safety or any other specific factor in its public interest evaluation.

 When, as here, a statutory scheme is subject to multiple interpretations, we must uphold the enforcing agency's construction if it is reasonable and in harmony with the statute. *See First Am. Title Ins. Co.,* 258 S.W.3d at 632. As the Supreme Court has explained, governmental agencies have a "unique understanding" of the statutes they administer. *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 1201, 173 L.Ed.2d 51 (2009) (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). In a complex regulatory scheme like the Act and with a phrase

---

13. Chief Justice Jefferson would hold that the term "public interest" unambiguously precludes the Commission from considering traffic-safety factors because of the TCEQ's separate statutory duty to consider those factors in certain situations. We do not agree that the content or legislative history of these extrinsic provisions renders the term "public interest" unambiguous as to the Commission. As we have previously stated, we apply an *unambiguous* statutory term according to its common meaning. *First Am. Title Ins. Co.,* 258 S.W.3d at 631. Here, we cannot interpret "public interest" according to its common meaning because it *is* ambiguous—instead, we must look to the statutory scheme of Chapter 27 and other extrinsic interpretive aids to determine the meaning of the term.

as amorphous as "public interest," this deference is particularly important. *See Pub. Util. Comm'n of Tex. v. Tex. Tel. Ass'n,* 163 S.W.3d 204, 213 (Tex.App.-Austin 2005, no pet.) ("Public interest determinations are dependent upon the special knowledge and expertise of the [Public Utility] Commission."). Under the plain terms of the Act, we conclude the Commission's construction of "public interest" as a narrow term that does not include traffic-safety considerations is reasonable and in alignment with the statute's meaning.

### 2. The Commission's Area of Expertise

Texas Citizens argues that we should afford no deference to an agency's interpretation of a statute that does not lie within its administrative expertise or pertain to a nontechnical issue of law. *See Rylander v. Fisher Controls Int'l, Inc.,* 45 S.W.3d 291, 302 (Tex.App.-Austin 2001, no pet.). Texas Citizens further contends that requiring the Commission to consider traffic-safety evidence in its public interest evaluation does not impose on it a duty to "regulate truck traffic" or otherwise evaluate matters beyond its expertise, but rather to simply consider whether traffic-safety concerns might cut against the propriety of the proposed well. The Commission could, Texas Citizens argues, limit the amount of waste the injection well can accept or regulate hours of operation, thus curtailing potential truck traffic, without having to regulate or make policy decisions impacting the state's roads. The Commission counters that its statutory directive is to regulate matters related to oil and gas production, not traffic concerns, and that it does not have the expertise or jurisdiction to consider these sorts of public-safety issues.

As an initial matter, the breadth of the term "public interest" is a question of law that implicates the Commission's very technical decision of whether to grant an injection well permit. But, more importantly, we disagree with Texas Citizens that the Commission's public interest inquiry is unrelated to its administrative expertise: to the contrary, the Commission interpreted the public interest finding in such a way as to ensure that it will *only* consider matters within its expertise. As we concluded above, the Commission's determination that "public interest" does not include traffic-safety matters is reasonable under the Act's statutory scheme. We further conclude it is reasonable given the Commission's unique competence as the state's agency overseeing oil and gas production.

The Commission has long been the agency charged with regulating matters related to oil and gas production, and is given broad discretion in its administration of oil and gas laws. *See* TEX. NAT. RES. CODE § 85.202(b) (requiring the Commission to "do all things necessary for the conservation of oil and gas and prevention of waste of oil and gas"); *R.R. Comm'n of Tex. v. Lone Star Gas Co.,* 844 S.W.2d 679, 686 (Tex.1992) (acknowledging the Legislature's grant of "broad discretion to the Commission in administering the laws regulating oil and natural gas"); *Stewart v. Humble Oil & Ref. Co.,* 377 S.W.2d 830, 834 (Tex.1964) ("[T]he courts have consistently recognized that the Commission must be given discretion in administering the oil and gas statutes."). Among other matters related to oil and gas production, the Legislature charges the Commission with making and enforcing "rules and orders for the conservation of oil and gas and prevention of waste of oil and gas." TEX. NAT. RES.CODE § 85.201.[14]

---

**14.** *See also id.* § 85.202(b) ("The commission shall do all things necessary for the conserva-

As the Commission argues, nothing in any of the Commission's enabling acts grants the Commission authority over matters related to traffic safety. Rather, each of these statutory provisions make clear that the Commission is the agency charged with administering laws related to oil and gas production. *See R.R. Comm'n v. Sterling Oil & Ref. Co.*, 147 Tex. 547, 218 S.W.2d 415, 418 (1949) ("The Legislature realized the great value of oil and gas and the importance of the task and duty placed on the Railroad Commission to conserve same for the use of the public, and by many provisions of the statutes full power is given the Railroad Commission to prevent the waste of oil and gas."). Further, it is "utterly impossible for the Legislature to meet the demands of every detail in the enactment of laws relating to the production of oil and gas.... The Legislature ... has authorized the Railroad Commission to handle the details relating to the preservation and conservation of the natural resources of the State." *Corzelius v. Harrell*, 143 Tex. 509, 186 S.W.2d 961, 964 (1945). The Commission must have discretion in determining the minutiae of its statutory mandates.

Here, Texas Citizens raised arguments concerning the impact of large trucks on dirt roads, inadequate road width to handle truck traffic, and safety concerns related to the truck traffic. Given the Commission's institutional focus on matters concerning oil and gas production, it is reasonable for the Commission to decline to consider matters beyond its administrative expertise. This is especially the case given the limitless number of factors the Commission may need to consider in evaluating an injection well permit if the Commission is required to study any potential subsidiary matter bearing on the public interest, such as truck traffic in this case. As Texas Citizens conceded at oral argument, it does not merely want for the Commission to examine matters related to truck traffic, but rather any factor that might conceivably touch on a broad definition of "public interest." In opposition to an injection well, a creative opponent could assert any number of concerns impacting the public interest entirely unrelated to the Commission's express legislative directives. Under Texas Citizens and the court of appeals' approach, the Commission would have to consider and weigh a limitless number of factors beyond the Commission's institutional competence.[15]

The Commission's purpose is to "do all things necessary for the conservation of oil and gas and prevention of waste of oil and gas." TEX. NAT. RES. CODE § 85.202(b). As the agency charged with administering the state's oil and gas laws, it is reasonable for

tion of oil and gas and prevention of waste of oil and gas and may adopt other rules and orders as may be necessary for those purposes."); § 86.041 ("The commission has broad discretion in administering the provisions of this chapter and may adopt any rule or order in the manner provided by law that it finds necessary to effectuate the provisions and purposes of this chapter.").

15. As Justice Pemberton noted in his concurrence to the denial of en banc review in the court of appeals, there is a "virtually infinite range of considerations" that could bear upon the public interest inquiry. 254 S.W.3d at 503 (Pemberton, J., concurring in denial of reconsideration en banc). In his concurrence to the denial of en banc review, Justice Waldrop also opined that the term public interest "could well have been intended to be broad enough to allow the Commission to address the myriad possible circumstances that might be presented in an injection well permit application." *Id.* at 507 (Waldrop, J., concurring in denial of reconsideration en banc). Nonetheless, both justices ultimately concluded the statutory scheme did not demonstrate a legislative intent to limit the Commission's statutory authority or jurisdiction so as to preclude its consideration of traffic-safety issues.

the Commission to refuse to consider traffic-safety evidence in its public interest analysis.[16]

### 3. Commission Practice in Weighing the "Public Interest"

The Commission finally argues that in the half-century since the Legislature first promulgated the requirement that it weigh the public interest in evaluating an injection well permit, it has never considered traffic-safety concerns. The Commission urges that its long-standing construction of the term "public interest" is especially entitled to judicial deference. Citing an Amarillo Court of Appeals' opinion, Texas Citizens counters that, at least on one occasion, the Commission did, in fact, consider traffic-safety evidence. The Amarillo Court of Appeals' decision, however, does not support Texas Citizens' assertion. In that case, as in the instant dispute, property owners protested a proposed injection well in a contested hearing before the Commission, arguing that the well would not comport with the public interest because of public-safety concerns. *Berkley v. R.R. Comm'n of Tex.*, 282 S.W.3d 240, 244 (Tex.App.-Amarillo 2009, no pet.). Following the Austin Court of Appeals' holding in the instant case, the Amarillo Court of Appeals explained that safety concerns "are indicia that should be considered by the Commission when assessing public interests." *Id.* In *Berkley*, however, there is no indication the Commission considered traffic-safety evidence in its decision; instead, the Commission found the proposed injection well would serve the public interest for similar reasons as those articulated in the order here. *Id.*[17]

We agree with the Commission that an agency's long-standing construction of a statute, especially in light of subsequent legislative amendments, is particularly worthy of our deference. *See Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (1944) (explaining that an agency's construction of a statute it is charged with enforcing is "worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence") (citations omitted); *see also Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 324 (Tex.2001).[18] The Commission has declined to consider public-safety evidence in its public interest analysis for almost fifty years, and Texas Citizens provides no authority to the contrary. Had the Legislature disagreed with the Commission's construction of "public interest," it could have amended the Act to require the Commission to take a broader view of the term. *See Stanford*, 181 S.W.2d at 273–74. We will not judicially amend the Act in the manner Texas Citizens proposes.

---

**16.** We note that the Legislature has granted other entities express statutory authority over the regulation of traffic-related concerns. *See, e.g.,* TEX TRANSP. CODE § 251.151 (granting county commissioners court the authority to "regulate traffic on a county road or on real property owned by the county that is under the jurisdiction of the commissioners court"); § 311.001 (granting home-rule municipality control over public highways, streets, and alleys of the municipality). We need not consider the potential intersection of another entity's regulation of traffic-safety issues with the Commission's grant of an injection well permit as that issue is not before us.

**17.** The *Berkley* decision was also rendered more than a year after the court of appeals' decision in this case, so it is possible that, even if the Commission did weigh public-safety factors, it was doing so as required by the Austin Court of Appeals' holding.

**18.** Because the Commission has long interpreted the public interest finding to not include traffic-safety issues, we need not consider the manner in which the Commission can potentially later revise its interpretation.

## IV. Conclusion

The court of appeals failed to grant deference to the Commission's interpretation of "public interest" in section 27.051(b)(1) of the Water Code and instead held the Commission abused its discretion in its construction of the statute. Because we conclude the Commission's interpretation of the phrase "public interest" is reasonable and in accord with the plain meaning of the statute, we hold the court of appeals erred in refusing to defer to the Commission's construction of the term.

Accordingly, we reverse the court of appeals' judgment and render judgment for the Commission and Pioneer in accordance with the trial court's original judgment.

Chief Justice JEFFERSON delivered an opinion concurring in the judgment, joined by Justice WILLETT and Justice LEHRMANN.

Chief Justice JEFFERSON, joined by Justice WILLETT and Justice LEHRMANN, concurring.

I concur in the Court's judgment, but I write separately because the statute at issue in this case unambiguously precludes the Railroad Commission ("Commission") from considering traffic safety factors as part of its public interest inquiry in the permitting of oil and gas waste injection wells.

As the Court and the parties attest, 336 S.W.3d at 627, "public interest" is a broad term, the scope of which is difficult to determine with precision. But the fact that a term may admit of different meanings, and may be ambiguous as to some conceivable set of facts, does not mean that it is ambiguous as to every proposed reading. The potential breadth of a statutory term does not prevent us from holding that a party's proposed construction is unambiguously precluded. *See* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 45:1 (7th ed.2007) (noting that the object of statutory interpretation is to determine a statute's "correct application *in a particular situation*" (emphasis added)).

The Commission relies principally on *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in urging us to defer to its interpretation of the statute. While we frequently defer to administrative agencies' statutory interpretations, we do so principally when the relevant statute is ambiguous. *See Fiess v. State Farm. Lloyds*, 202 S.W.3d 744, 747 (Tex.2006) (noting that "the language at issue must be ambiguous" before we grant the agency's interpretation deference). Here, I believe the statute unambiguously makes clear that, in this context, "public interest" cannot include traffic safety factors.

Chapter 27 of the Water Code regulates the permitting of injection wells. The Commission is charged with permitting injection wells for the disposal of oil and gas waste, while the Texas Commission on Environmental Quality ("TCEQ") is charged with permitting injection wells for the disposal of industrial or municipal waste. TEX. WATER CODE § 27.011 (granting TCEQ the power to regulate injection wells for the disposal of industrial and municipal waste); *id.* § 27.031 (granting the Commission the power to regulate injection wells for the disposal of oil and gas waste). The Code mandates consideration by the agencies of a number of factors in deciding whether to grant a permit application. Most relevantly, both must consider whether the proposed well "is in the public interest." *Id.* § 27.051(a)(1); *id.* § 27.051(b)(1). The Commission is directed to consider a number of other factors, all of which have to do with the protection

of natural resources and the regulation of the oil and gas industry. *See id.* § 27.051(b). TCEQ is directed to consider a similar list of factors, to which is added one crucial provision: a mandate that TCEQ consider traffic safety in granting injection well permits. *Id.* § 27.051(a)(6). The significance of this provision is two-fold. First, had the Legislature intended for the Commission to consider traffic safety factors in permitting wells, it would have included the same express language among the Commission's charges as it did among TCEQ's. Second, the portion of the statute dealing with TCEQ, unlike that dealing with the Commission, contains a partial definition of the term "public interest." TCEQ, in considering the public interest, "shall consider, but shall not be limited to the consideration of" several factors bearing on the protection of natural resources and the environment. *Id.* § 27.051(d). The directive to consider traffic safety is not made part of that public interest inquiry. This suggests that the Legislature, even as it required TCEQ to consider traffic safety factors, did not want that inquiry to be part of a consideration of the public interest. Rather, public interest, in the context of the statute governing both TCEQ and the Commission, is limited to a consideration of factors consistent with the chapter's purpose: "to maintain the quality of fresh water in the state to the extent consistent with the public health and welfare and the operation of existing industries, taking into consideration the economic development of the state." *Id.* § 27.003.

We do not defer to agency interpretations of unambiguous statutes. Although I agree with the Commission that it need not consider traffic safety when permitting injection wells, I do so because chapter 27 of the Water Code so requires. The principle behind the Court's holding would require deference to a future Commission's decision that denied a permit based on the consideration of such traffic safety factors as the presence of trucks hauling saltwater on narrow neighborhood roads. I believe, to the contrary, that the statute's language and context preclude such an interpretation as a matter of law. Because there is no legitimate role for deference here, and because the statute prohibits consideration of traffic safety in the Commission's decision to issue injection permits, I concur in the Court's judgment.