# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

### NO. 03-10-00764-CV

<hr>

**Bell Helicopter Textron, Inc., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

<hr>

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-08-002279, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

<hr>

## M E M O R A N D U M   O P I N I O N

Bell Helicopter Textron, Inc. ("Bell") appeals a take-nothing judgment in a sales and use tax refund suit under Chapters 112 and 151 of the Texas Tax Code.  Tex. Tax Code Ann. §§ 112.001-.156, 151.001-.802 (West 2008 & Supp. 2011).[1]  Following a tax audit Bell conducted under the supervision of a state auditor, Bell received a refund for tax overpayments in each of the periods covered by the audit, along with interest.  Dissatisfied with the interest calculation, Bell sued the Comptroller of Public Accounts for the State of Texas ("Comptroller"), alleging that the state improperly netted Bell's tax deficiencies in each tax period against its overpayments in the same period before calculating the interest on each overpayment.  Bell asserted that the Comptroller should have calculated interest on the gross overpayment in each tax period rather than on the net

<hr>

[1]  In this opinion, we cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

overpayment. Following the first phase of a bifurcated bench trial, the trial court rendered a take-nothing judgment. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The dispute in this case arises from a "managed audit" Bell conducted for the period of January 1, 2001 through June 30, 2004. As authorized in section 151.0231 of the tax code, Bell entered into an agreement with the Comptroller to conduct its own audit under the Comptroller's supervision ("managed-audit agreement"). *Id.* § 151.0231 (West 2008). Pursuant to both section 151.0231 and the managed-audit agreement, the Comptroller was prohibited from assessing a penalty on any tax deficiency during the audit period absent fraud or willful tax evasion and had discretion—but was not required—to "waive all or part of the interest that would otherwise accrue on any amount identified to be due in [the] managed audit." *Id.*

In this case, in communications with Bell after the managed-audit agreement was executed, the Comptroller agreed to waive all interest on amounts due (i.e., for underpayments), but the audit revealed that Bell was in a net overpayment position in each period in which taxes were due. That is, in each monthly tax period,[2] Bell underpaid on some transactions and overpaid on other transactions, but once the underpayments for each period were offset against the overpayments in the same period, Bell was due a refund for each period covered by the audit. In determining the

---

[2] Under the tax code, a taxing period is the period of time during which tax accrues and for which tax is reported (i.e., remitted) to the Comptroller. Tex. Tax Code Ann. §§ 151.401(a) (prescribing sales and use tax due dates), .402(a) (prescribing sales and use tax report due dates) (West Supp. 2011). It is undisputed that Bell accrued and reported taxes on a monthly basis during the audit period.

total amount to be refunded, the Comptroller calculated the interest due based on the net overpayment in each period.

Bell contends, however, that, in order to give effect to the Comptroller's agreement to waive interest on underpayments, the Comptroller was required to calculate interest on the gross amount of the overpayments in each period *before* subtracting the underpayments. Because the audit revealed no tax period in which Bell was in a net underpayment position, the netting approach the Comptroller utilized resulted in Bell's receiving the same amount of interest on overpayments that it would have received if the Comptroller had not agreed to waive interest on tax deficiencies. Thus, Bell asserts that it was deprived of the statutory and contractual benefit of the managed-audit arrangement and the Comptroller's agreement to waive interest. Bell contends that, in order to give full effect to the Comptroller's agreement to waive interest (i.e., to ensure a financial benefit to Bell for conducting the managed audit), the Comptroller was required to (1) calculate the gross overpayment and interest on the overpayment for each tax period, (2) calculate the gross underpayment and interest on the gross underpayment for each period, and (3) waive the interest on the underpayment before offsetting the under- and overpayments.

The following example illustrates the parties' respective positions concerning interest calculation. Assuming a $100 overpayment and a $100 underpayment in the same tax period and an interest rate of 10% applicable to both,[3] the Comptroller would net the two categories of payments, conclude that taxes were properly paid for the overall period, and neither assess interest on a

---

[3] The interest rate applicable to tax deficiencies and tax refunds was the same for all periods covered by the audit. *See* Tex. Tax. Code Ann. § 111.064(c) (West Supp. 2011). Effective September 1, 2005, however, the interest rate applicable to refunds may be lower than the rate applicable to deficiencies. *Id.* § 111.064(a).

deficiency nor pay interest on an overpayment. Under Bell's theory, in contrast, the Comptroller would owe Bell $10 in interest based on the following methodology:

**STEP 1**:      $100 overpayment + $10 interest = $110 overpayment due to Bell

**STEP 2**:      $100 underpayment + $10 interest – $10 interest pursuant to interest waiver agreement = $100 underpayment due from Bell

**STEP 3**:      $110 overpayment (including interest) – $100 underpayment = $10 due to Bell

Because the Comptroller did not agree with Bell's proposed methodology, Bell filed the underlying tax-refund suit after exhausting its administrative remedies. Bell complained that the netting method employed by the Comptroller to calculate interest on Bell's tax refund was inconsistent with the language of the tax code and was not specified in the managed-audit agreement. Bell further asserted that the Comptroller's methodology was an invalid rule under the Administrative Procedures Act (APA). Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008 & Supp. 2011). The Comptroller countered that the netting methodology applied in this case was a uniform policy applicable to all taxpayers for at least thirty years and was derived from the plain language of the applicable tax provisions. The Comptroller denied relying on any administrative policy, procedure, or interpretation that constituted a "rule" under the APA. *Id.* § 2001.003(6).

With the parties' agreement, the trial court ordered a bifurcated bench trial, deferring to a separate trial the amount to be refunded, if any. Following the conclusion of the first phase, the trial court rendered final judgment in the Comptroller's favor. In its findings of fact and conclusions of law, the trial court determined that the Comptroller properly construed the tax code and complied with the managed-audit agreement. The court further concluded that the Comptroller's method of

4

calculating refund interest on a period basis was reasonable and in compliance with the tax code and the managed-audit agreement.

On appeal to this Court, Bell asserts the following issues: (1) whether the Comptroller's methodology for calculating interest on tax refunds in a managed sales and use tax audit complied with the waiver of interest authorized in section 151.0231(g) of the tax code; (2) whether the trial court's findings of fact 3, 4, and 5 were based on the court's erroneous interpretation of section 151.0231(g); (3) whether the trial court's findings of fact 3, 5, and 6 were findings of fact or conclusions of law; (4) whether the Comptroller's methodology for calculating interest on tax refunds complied with section 151.508 of the tax code; (5) whether the Comptroller's methodology for calculating interest on tax refunds is an agency rule under the APA; and (6) whether the Comptroller's methodology for calculating interest on tax refunds is invalid because it was not adopted through rule-making as required by the APA.

## DISCUSSION

The controlling issue in this case is whether the Comptroller properly calculated interest on Bell's net overpayment of sales and use taxes or instead should have calculated interest on the gross amount of the overpayment before offsetting any underpayments from the same tax period. Resolution of this issue requires us to construe the pertinent provisions of the tax code. The proper construction of a statute is a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek "first and foremost" in the statutory text. *Id.* Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application

5

of the plain language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage," Tex. Gov't Code Ann. § 311.011 (West 2005), and we look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). Although we must give "serious consideration" to the construction of a statute by the administrative agency charged with its enforcement, we do not defer to an agency interpretation unless the statute is ambiguous. *See id.* at 624. With these well-established principles in mind, we turn to the statutory construction issues presented in this case.

Bell asserts that the Comptroller's interest-calculation methodology fails to comply with Texas Tax Code section 151.0231(g), concerning waiver of interest in managed audits, and section 151.508, concerning offsets. Section 151.0231(g) provides in pertinent part:

> Unless the [managed] audit or information reviewed by the comptroller under Subsection (f) discloses fraud or wilful evasion of the tax, the comptroller may not assess a penalty and *may waive all or part of the interest that would otherwise accrue* on any amount identified to be due in a managed audit.

Tex. Tax. Code Ann. § 151.0231(g) (West 2008) (emphasis added).[4] Bell contends that the "on any amount identified to be due" language in this section requires granulation of interest calculation on a transaction-by-transaction basis rather than on a tax-period basis. We disagree. Among other things, Bell ignores the language in section 151.0231(g) that the waiver extends only to interest that would

---

[4] The language in the managed-audit agreement is substantively similar but not identical to the language in section 151.0231(g). Bell does not contend that the differences in language are material.

6

"accrue" on amounts that are "due." If interest would not accrue and no taxes are due, there is nothing to be waived. Therefore, proper construction of section 151.0231(g) requires examination of the tax code provisions governing interest accrual and tax due dates.

The same is true of section 151.508, which provides:

> In making a determination [of tax liability], the comptroller may offset an overpayment for one or more periods against an underpayment, penalty, and interest accrued on the underpayment for the same period or one or more other periods. Any interest accrued on the overpayment shall be included in the offset.

*Id.* § 151.508 (West 2008). As Bell correctly observes, this section contemplates that overpayments and underpayments can occur in the same period. This section further acknowledges that there may be interest accrued on each component as well as a penalty, but not necessarily in the same period. Moreover, although the decision to offset the underpayment, penalty, and accrued interest is discretionary, the statute directs that, if the Comptroller elects to offset, "any interest accrued" on overpayments must be included in the offset. Again, the key word in this section is "accrued." If there is no interest that has accrued, there is no interest to be included in an offset.

Because neither section 151.0231 nor section 151.508 speaks to interest accrual or tax due dates, statutory construction principles dictate that we look elsewhere within the tax code to discern the proper construction of these statutes. In conducting this inquiry, it becomes clear that the only reasonable interpretation of these provisions is that underpayments and overpayments in the same period will not have accrued any interest at the time the tax code specifies for mandatory offsets; therefore, there is no interest to be waived and no interest to include in the offset. The Comptroller's netting method is not only a reasonable construction of the relevant tax code provisions, it is dictated by the plain language of the statute.

7

Section 151.512 of the tax code specifies that delinquent sales and use taxes begin accruing interest sixty days after the tax became "due and payable" to the state. *Id.* § 151.512 (West 2008). Subject to some exceptions not applicable or claimed in this case, sales and use taxes are "due and payable to the comptroller on or before the 20th day of the month following the end of each calendar month." *Id.* § 151.401(a) (West Supp. 2011). Similarly, section 111.064 provides that interest on a tax refund or credit is due for an amount "erroneously paid for a period" beginning on the later of sixty days after the date of payment or the due date of the tax report. *Id.* § 11.064(a) (West Supp. 2011). Tax reports for sales and use taxes are due on the same date that taxes are due and payable as specified in section 151.401. *Id.* § 151.402 (West Supp. 2011) (tax report is due same date that tax payment for period is due). At the earliest, therefore, interest begins accruing on tax deficiencies and tax refunds eighty days after the end of the tax period. Before the interest accrual date arrives, however, another provision of the tax code mandates that any overpayment be applied to the underpayment. Section 111.104, which governs tax refunds, states:

> (a) If the comptroller finds that an amount of tax, penalty, or interest has been unlawfully or erroneously collected, the comptroller *shall credit* the amount *against any other amount when due and payable* by the taxpayer from whom the amount was collected. The remainder of the amount, if any, may be refunded to the taxpayer from money appropriated for tax refund purposes.
>
> . . . .
>
> (e) This section applies to all taxes and license fees collected or administered by the comptroller, except the state property tax.

*Id.* § 111.104(a), (e) (West 2008) (emphasis added). The plain language of this mandatory offset provision is that any tax overpayment must be applied against a tax deficiency as of the date the tax deficiency became "due and payable," which occurs in the case of overpayments and underpayments

8

in the same tax period before interest on either the overpayment or underpayment begins to accrue. Nothing in sections 151.0231 and 151.508 changes these basic computational principles, and nothing in these provisions or the managed-audit agreement guarantees Bell a financial benefit from conducting a managed audit. In this case, the only reason the Comptroller's discretionary interest waiver did not confer a benefit on Bell is because Bell did not actually owe any amounts upon which interest would otherwise accrue.

We hold that the Comptroller's interest calculation comports with the plain meaning of the relevant tax code provisions; therefore, issues one and four are overruled, and we need not address the remaining issues.

**CONCLUSION**

For the reasons stated, the trial court's judgment is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:  December 29, 2011

9