# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00116-CV

**Dutchmen Manufacturing, Inc., Appellant**

**v.**

**Texas Department of Transportation, Motor Vehicle Division, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-09-004112, HONORABLE TIM SULAK, JUDGE PRESIDING**

## O P I N I O N

Dutchmen Manufacturing, Inc. (Dutchmen) appeals the district court's judgment affirming the final order of the Texas Department of Transportation's Motor Vehicle Division (the Division). The Division ordered Dutchmen to repurchase a travel trailer from its owner, John Kennemer, who sought relief under sections 2301.601-.613 of the occupations code.[1] *See generally* Tex. Occ. Code Ann. §§ 2301.601-.613 (West 2012) (commonly called the "lemon law"). Dutchmen argues that the district court erred by affirming the Division's final order because substantial evidence did not support the Division's findings and conclusions that: (1) Dutchmen was provided proper notice of the alleged defects and a reasonable opportunity to repair the trailer, and (2) the trailer's value was substantially impaired. We will affirm the district court's judgment because we find no error in the Division's final order.

---

[1] We cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

## BACKGROUND

Kennemer bought a 2008 Dutchmen travel trailer on February 4, 2008 from Crestview RV Center in Buda, Texas.[2] He paid $33,702.70 for the trailer. Kennemer, a resident of Franklin, Texas, purchased the trailer to use during the week while he was working in San Antonio, Texas. The trailer was delivered to San Antonio in March, and Kennemer began using it in mid-March 2008. Approximately a week later, the trailer began having plumbing problems that caused water to leak into the trailer. Kennemer described it as "water flooding out from underneath the walls" into various rooms in the trailer.

Kennemer notified Crestview in Buda by telephone, and the service manager, Jeff Bosse, referred him to the Crestview dealer in San Antonio. Crestview in San Antonio referred Kennemer to a dealer it used for warranty work, Good Time RV. Good Time sent a service technician out on March 26, 2008, and the technician documented a number of problems with the trailer, including the water leaks inside the trailer when using the sani-flush system for the black-water holding tanks. The technician also requested a plumbing schematic from Dutchmen. The Good Time service technician emailed Kennemer on March 28 to inform him that he was still waiting for the plumbing schematic and to provide Kennemer with the estimate that the technician had sent to Crestview in Buda. On April 4, Kennemer forwarded the email and attachments from the Good Time technician to Bosse (the Crestview service manager). On the same day, Kennemer emailed Ed Shepherd at Dutchmen to follow up on a telephone conversation about the sani-flush system

---

[2] The facts recited herein are taken from the testimony and exhibits admitted at the contested-case hearing.

leaking water into the trailer and informed Shepherd that Good Time's service technician had been in contact with the factory to attempt to get a schematic for the plumbing system. On April 5, Kennemer sent pictures of various valves and hoses that are part of the sani-flush system to Bosse at Crestview, the Good Time service technician, and Shepherd at Dutchmen. On April 9, Kennemer sent Shepherd two additional pictures of hoses and valves.

On Monday, May 5, Good Time's service department emailed Kennemer to inform him that Good Time was waiting for Dutchmen to send the valves before scheduling an appointment to make the repairs. Kennemer emailed Shepherd that same day to ask when the parts would be shipped and to inform him that no repairs had yet been made on the trailer. On Thursday, May 8, Good Time's service department emailed Kennemer to inform him that Shepherd had left a message that the parts had shipped.

On Monday, May 12, Kennemer emailed Shepherd at Dutchmen, Bosse at Crestview, the Good Time technician, and the Good Time service department. Kennemer informed them that he needed to have his unit fixed soon, reminded them that he first had Good Time out for a service call over six weeks earlier on March 26, and explained that he was willing to take the unit back to Crestview to have it repaired, but would need compensation for travel and living expenses until it was repaired or replaced. He also expressed that he was reaching a point of not wanting the unit any longer because he was beginning to feel that he was being taken advantage of and that the problem would never be fixed. He stated that his attorney had informed him that under the lemon law he had to give Dutchmen the opportunity to fix the problem before he could either have his money returned or another unit.

Next, on June 17, 2008, Kennemer sent a notice letter to Dutchmen and Crestview summarizing the history of his problems with the trailer and the efforts made by him and the Good Time technician to obtain the necessary schematic for the plumbing system.[3] He itemized the other problems, too, noting that they had "substantially impaired the use and value of [his] trailer" and created serious safety problems. He requested that Dutchmen correct the problem within 30 days of receiving the letter and stated his intent to deliver the trailer to the service center at Crestview in a couple of weeks and asked that Dutchmen contact him to arrange a mutually convenient time for an inspection and repair of his vehicle. He also stated his expectation that Dutchmen would repurchase the trailer if it and the dealer could not correct the problems.

Kennemer delivered the trailer to Crestview in Buda on June 28, 2008. Crestview performed work on the trailer. Kennemer testified that he went back several times to try to get the problems resolved, but when he "would go pick the trailer up, there would be other problems." No one from Dutchmen contacted Kennemer about the repairs while Crestview had the trailer.

Kennemer filed a lemon-law complaint with the Division on October 21, 2008. Shortly after he filed his complaint, Crestview sent him a letter informing him that he had to pick up his trailer or Crestview would begin charging him for storage. On January 14, 2009, Kennemer met with Mike Chamberlain, Dutchmen's national field representative, who had been assigned to investigate Kennemer's complaint after Dutchmen received the lemon-law complaint in October 2008.

---

[3] There is no evidence in the record of contact between Dutchmen and Kennemer, Crestview and Kennemer, or Good Time and Kennemer between the May 12 email from Kennemer and his June 17 notice letter to Dutchmen and Crestview.

4

Chamberlain inspected the trailer and offered to make a variety of repairs. Kennemer orally refused Chamberlain's offer and also refused a second written offer made later through Dutchmen's counsel.

In April 2009, Kennemer and Dutchmen participated in a hearing before an administrative law judge (ALJ). The ALJ heard testimony from Kennemer and from Chamberlain. As part of the hearing process, the ALJ and Dutchmen's counsel inspected the trailer.

After the hearing, the ALJ found that Dutchmen had offered to repair the problems after receiving notification of them and Kennemer refused to allow Dutchmen to make the repairs. Consequently, the ALJ concluded that Kennemer was not eligible to have the trailer repurchased under the lemon law, and instead Dutchmen should be ordered to repair the trailer. *See* Tex. Occ. Code Ann. § 2301.606(c)(2) (West 2012) (establishing that Division may only refund or replace vehicle if manufacturer, converter, or distributor has been given opportunity to cure alleged defect); 43 Tex. Admin. Code § 8.208(8) (2008) (Tex. Dep't of Transp., Decisions) (establishing that complaint must be dismissed if vehicle does not qualify for replacement or repurchase under lemon law, but director may order repair work to be performed or other action taken to obtain compliance with warranty obligations) *repealed* 35 Tex. Reg. 3855 (2010) (proposed Mar. 12, 2010). The Division's director subsequently issued a final order in which he substituted certain findings of fact and conclusions of law proposed by the ALJ and ordered Dutchmen to repurchase the trailer. In the final order, the director found that the ALJ misapplied or misinterpreted the law and prior administrative decisions when analyzing the issue of Dutchmen's opportunity to cure. *See* Tex. Gov't Code Ann. § 2001.058(e) (West 2008) (requiring agency to explain specific reason and legal basis for change to finding of fact or conclusion of law made by ALJ). The director noted that the ALJ's ruling that

Dutchmen did not have an opportunity to cure appeared to be based on the evidence showing that Dutchmen had made offers to repair the trailer after Kennemer filed his lemon-law complaint in October 2008 and that Kennemer refused those offers. The director explained that the evidence also showed that after Kennemer's June 17, 2008 letter to Crestview and Dutchmen, Kennemer subsequently delivered the trailer to Crestview, at which point Dutchmen had the opportunity to cure the alleged defects, but instead allowed Crestview to attempt repairs that proved unsuccessful. The director concluded that nothing in the lemon law requires a complaining vehicle owner to extend another opportunity to cure after filing a lemon-law complaint or to accept subsequent offers to perform additional repairs if the owner extended an opportunity to cure before filing the complaint, citing two of the Division's prior decisions. As a result, in this case, where there was both an opportunity extended to the manufacturer to cure and an actual repair attempt, the Division's order required Dutchmen to repurchase the trailer.

Dutchmen sought judicial review of the Division's order in district court. The trial court affirmed the Division's decision. Dutchmen subsequently brought this appeal.

**STANDARD OF REVIEW**

The substantial-evidence standard of the Texas Administrative Procedure Act (APA) governs our review of the Division's final order. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). The APA authorizes reversal or remand of an agency's decision that prejudices the appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, or (5) are arbitrary

6

or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Id.* § 2001.174(2)(A)-(D), (F). An agency acts arbitrarily if it makes a decision without regard for the facts, if it relies on fact findings that are not supported by any evidence, or if there does not appear to be a rational connection between the facts and the decision. *See City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819-20 (Tex. App.—Austin 2011, pet. denied). In other words, we must remand for arbitrariness if we conclude that the agency has not "'genuinely engaged in reasoned decision-making.'" *Id.* (quoting *Starr Cnty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)). Otherwise, we may affirm the administrative decision if we are satisfied that "substantial evidence" exists to support it. Tex. Gov't Code Ann. § 2001.174(1).

We consider the reliable and probative evidence in the record as a whole when testing an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence, as the APA authorizes us to do. *Graff Chevrolet Co. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied); *see* Tex. Gov't Code Ann. § 2001.174(2)(E). Under this deferential standard, we presume that the agency's order is supported by substantial evidence, and Dutchmen bears the burden of proving otherwise. *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). The burden is a heavy one—even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency. *Id.* at 452. Our ultimate concern is the reasonableness of the agency's order, not its correctness. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984).

7

Whether the agency's order satisfies the substantial-evidence standard is a question of law. *Id.* Thus, the district court's judgment that there was substantial evidence supporting the Division's final order is not entitled to deference on appeal. *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). On appeal from the district court's judgment, the focus of the appellate court's review, as in the district court, is on the agency's decision. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000); *Tave v. Alanis*, 109 S.W.3d 890, 893 (Tex. App.—Dallas 2003, no pet.). We review the agency's legal conclusions for errors of law and its factual findings for support by substantial evidence. *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)) (internal quotation marks omitted).

The legislature has charged the Division with causing manufacturers to perform their warranty obligations under the lemon law and has given it broad discretion to adopt rules for enforcing and implementing the lemon law. *See* Tex. Occ. Code Ann. § 2301.602 (West 2012). When there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, we generally defer to the agency's interpretation unless it is "plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). But this deference to the agency's interpretation is not conclusive or unlimited—we defer only to the extent that the agency's interpretation is reasonable. *See id.*

8

When we construe statutes, our primary objective is to give effect to the intent of the legislature, "which, when possible, we discern from the plain meaning of the words chosen." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We consider statutes and rules as a whole rather than their isolated provisions. *TGS-NOPEC*, 340 S.W.3d at 438-39. We presume that the legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *Id.* We may consider other factors in ascertaining legislative or administrative intent, including the law's objective. Tex. Gov't Code Ann. § 311.023(1) (West 2005); *see also Shumake*, 199 S.W.3d at 284.

### GOVERNING LAW

Two primary goals of the lemon law are (1) encouraging extrajudicial resolution of warranty-related disputes between motor-vehicle manufacturers and buyers of new vehicles and (2) mitigating the manufacturers' economic advantages in those disputes. *Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n*, 846 S.W.2d 139, 142 (Tex. App.—Austin 1993, no writ). The intent of the law is to provide the buyer of a new vehicle with a way to obtain a refund or a replacement vehicle without the obstacles of litigating under other applicable laws. *Id.*

The Division may order a manufacturer to make repairs necessary to conform a new vehicle to the applicable manufacturer's warranty.[4] Tex. Occ. Code Ann. § 2301.603 (West 2012). The statute also authorizes the Division to order the manufacturer to replace or repurchase the vehicle (and reimburse the owner for reasonable incidental costs resulting from loss of use of the vehicle) if the manufacturer:

---

[4] The statute applies to "a manufacturer, converter, or distributor," but we will refer only to "a manufacturer" for simplicity. *See, e.g.*, Tex. Occ. Code Ann. §§ 2301.603-.606 (West 2012).

9

[i]s unable to conform a motor vehicle to an applicable express warranty by repairing a defect or condition that creates a serious safety hazard or substantially impairs the use or market value of the motor vehicle after a reasonable number of attempts.

*Id.* § 2301.604 (West 2012). The statute outlines situations that create a rebuttable presumption that "a reasonable number of attempts have been undertaken" to repair a vehicle. *Id.* § 2301.605 (West 2012). The Division may only order a manufacturer to repurchase or replace a vehicle if the owner has mailed written notice of the alleged defect to the manufacturer and the manufacturer has been given an opportunity to cure the alleged defect (i.e., an opportunity to make a reasonable number of repair attempts). *Id.* § 2301.606 (West 2012); *see also id.* §§ 2301.604, .605. If the Division orders a manufacturer to repurchase a vehicle, the manufacturer must accept the vehicle's return in exchange for a refund of the purchase price, less a reasonable allowance for the owner's use of the vehicle, and any other allowances or refunds payable to the owner. *Id.* § 2301.604(a)(2).

## DISCUSSION

In two issues, Dutchmen asserts that there is no evidence, much less substantial evidence, to support the Division's findings and conclusions that: (1) Dutchmen was provided proper notice of the alleged defects and a reasonable opportunity to repair the trailer, and (2) the trailer's value was substantially impaired.

### Proper notice and reasonable opportunity to cure

Dutchmen contends Kennemer was not entitled to the remedy of repurchase because there is no evidence that he provided proper notice and a reasonable opportunity to cure as required under the lemon law. Dutchmen asserts that the lemon law mandates that an owner comply with the

10

procedure set forth in a manufacturer's warranty for obtaining repairs and that Kennemer did not do so. Dutchmen argues that because its warranty provides that an owner must first seek warranty service from an authorized dealer, and then, contact Dutchmen if the dealer is unable to resolve any warranty issues, Kennemer was required to provide Dutchmen with a second notice when Crestview was unable to resolve the alleged warranty issues.

Dutchmen's argument centers on its interpretation of sections 2301.604 and 2301.605 of the occupations code. Dutchmen contends that sections 2301.604 and 2301.605 must be harmonized with section 2301.606's requirement that the owner provide written notice of the alleged defect and provide the manufacturer with an opportunity to cure before the Division may order a refund or replacement of the vehicle. It argues that because sections 2301.604 and 2301.605 require that a manufacturer be allowed a reasonable number of attempts "to conform a motor vehicle to *an applicable express warranty*," an owner is required to look to the provisions of the express warranty when providing the manufacturer a reasonable number of repair attempts and follow any notice procedure set forth in the warranty. *See id.* §§ 2301.604, .605. The Division interprets the statute as requiring only one notice to the manufacturer and only one reasonable opportunity to cure, arguing that this interpretation is supported by the plain language of relevant statutory provisions. For the reasons explained below, we agree with the Division.

We begin by examining the plain meaning of the words used in the relevant statutory provisions to determine whether the provisions are ambiguous; if they are not, we will apply their words according to their common meaning. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). Section 2301.606 provides that:

11

The director may not issue an order requiring a manufacturer, converter, or distributor to make a refund or to replace a motor vehicle unless:

(1) the owner or a person on behalf of the owner has mailed written notice of the alleged defect or nonconformity to the manufacturer, converter, or distributor; and

(2) the manufacturer, converter, or distributor has been given an opportunity to cure the alleged defect or nonconformity.

Tex. Occ. Code Ann. § 2301.606(c).

First, we note that the plain language of section 2301.606 establishes that written notice to the manufacturer and "*an* opportunity to cure" are the only prerequisites for an order to refund or replace a defective vehicle.[5] *Id.* (emphasis added). This provision unambiguously requires only one notice and one opportunity to cure.[6] Second, no language in this provision can be read to require that the one written notice must conform to any notice procedure provided for by the "applicable express warranty" to the extent that the warranty procedure differs from the statutory procedure. In essence, Dutchmen asks us to read section 2301.606 as saying that the Division may

---

[5] As we will discuss in more detail in our analysis of Dutchmen's second issue, section 2301.606 also provides that it is an affirmative defense to a remedy provided by the lemon law that a nonconformity "does not substantially impair the use or market value of the motor vehicle." Tex. Occ. Code Ann. § 2301.606(b)(2).

[6] Dutchmen complains that following the plain language of the statute in this way ignores "how warranty service is performed in the real world." It contends that manufacturers would have no incentive to let dealers attempt repairs first once the manufacturer has received notice that the vehicle needs repair and that manufacturers would have "to bring every vehicle to Detroit, which would be highly inefficient and inconvenient for consumers." We note that nothing in the lemon law constrains a manufacturer's ability to contract with its authorized dealer to require the dealer to keep the manufacturer informed about the progress of repairs after an owner has provided written notice of defects. Similarly, nothing in the lemon law constrains a manufacturer's ability to contact an owner who has notified a manufacturer that it will attempt to obtain warranty repair from a dealer to learn whether those repairs have been completed to the owner's satisfaction.

12

only order a manufacturer to refund or replace a vehicle if (1) the owner "has mailed written notice of the alleged defect or nonconformity to the manufacturer" *as required by the manufacturer's applicable express warranty*, and (2) the manufacturer "has been given an opportunity to cure the alleged defect or nonconformity" *as provided by the manufacturer's applicable express warranty*. When the legislature uses a word or phrase in one portion of a statute but excludes it from another, we will not imply it where it has been excluded. *See Texas Citizens*, 336 S.W.3d at 628. Furthermore, we cannot insert additional words or requirements into a statutory provision unless it is necessary to do so to give effect to clear legislative intent. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). When we read the statute as a whole, we find no legislative intent to superimpose a manufacturer's notice requirements over the statutory notice requirements.

In fact, section 2301.607 provides that "[a] contractual provision that excludes or modifies a remedy provided by this subchapter is prohibited and is void as against public policy." Tex. Occ. Code Ann. § 2301.607(g) (West 2012). In this case, Dutchmen's warranty modifies the remedy of repurchase or replacement by requiring that Dutchmen be given a second notice and second opportunity to cure if its authorized dealer is unable to resolve any warranty claims after the vehicle is delivered to the dealer for repair, even if Dutchmen was previously notified of the defects. Dutchmen argues that providing a procedure for obtaining warranty service does not modify the remedies available under the statute. As an example, it explains that section 2301.607 precludes a manufacturer from declaring that an owner's remedy is limited to repairs only. But that is exactly what Dutchmen has done here. It contends that Kennemer's remedy should be limited to repairs because he should have notified Dutchmen that Crestview was unable to resolve his warranty claims.

13

Dutchmen's procedure establishes a hurdle to obtaining a statutory remedy that is not found in the statute; modifying an owner's ability to obtain a statutory remedy *is* modifying the remedy. As a result, we find that the notice provision in Dutchmen's warranty is void to the extent it requires an owner to provide more notice to Dutchmen than the lemon law requires.

Third, the language in sections 2301.604 and 2301.605 requiring a manufacturer to attempt "to conform a motor vehicle to an applicable express warranty" does not create any ambiguity or conflict among the provisions when read in conjunction with section 2301.606. Sections 2301.604 and 2301.605 unambiguously require that the manufacturer make a reasonable number of attempts to conform the allegedly defective *vehicle* to the condition guaranteed by the warranty. Nothing in the phrasing of these provisions suggests that the owner must conform to the warranty procedure when seeking warranty enforcement. There is no conflict or ambiguity requiring us to harmonize these statutory provisions.

The Division found that Kennemer sent the June 17, 2008 letter to Crestview and Dutchmen, that Dutchmen contacted Crestview, and Crestview undertook repairs to the trailer beginning June 28, 2008. It also found that the vehicle was out of service for more than 30 days.[7]

---

[7] Dutchmen does not contest this factual finding. Under section 2301.605, one way of establishing a rebuttable presumption that a reasonable number of attempts have been undertaken to conform a motor vehicle to an applicable express warranty is by showing that:

> a nonconformity still exists that substantially impairs the vehicle's use or market value and: (A) the vehicle is out of service for repair for a cumulative total of 30 or more days in the 24 months or 24,000 miles, whichever occurs first, following the date of original delivery to the owner; and (B) at least two repair attempts were made in the 12 months or 12,000 miles following the date of original delivery to the owner.

14

The Division concluded that "[t]he repair visit of June 28, 2008, which took place after written notice to [Dutchmen], satisfies the opportunity to cure requirement for relief," entitling Kennemer to have the trailer repurchased. We find that the Division properly applied the unambiguous statutory language when it concluded that Kennemer had complied with the statutory requirements of notice and a reasonable opportunity to repair and that Kennemer thus was entitled to have the trailer repurchased. Furthermore, after examining the record, we find that the Division's conclusion is supported by substantial evidence. Consequently, we overrule Dutchmen's first issue.

**Substantial impairment**

In its second issue, Dutchmen challenges the Division's conclusion of law stating that "[t]he concerns noted in Finding of Fact No. 2 substantially impair the value of [the] vehicle."**[8]** As noted above, the lemon law allows the Division to order a manufacturer to refund or replace the vehicle if the manufacturer "is unable to conform the vehicle to an applicable express warranty by repairing or correcting a defect or condition that creates a serious safety hazard or *substantially impairs the use or market value* of the motor vehicle after a reasonable number of attempts . . . ." *Id.* § 2301.604(a) (emphasis added). In addition, section 2301.606 establishes that a manufacturer may plead and prove as an affirmative defense to a lemon-law remedy that a nonconformity does not substantially impair the use or market value of a vehicle. *Id.* § 2301.606(b)(2).

---

Tex. Occ. Code Ann. § 2301.605(a)(3). Similarly, Dutchmen does not dispute that at least two repair attempts were made in the first twelve months that Kennemer owned the vehicle.

**[8]** The Division substituted this conclusion of law in its final order for the ALJ's conclusion that "[p]ursuant to Tex. Occ. Code Ann. § 2301.606(c)(2), [Kennemer] is not entitled to have the trailer repurchased." *See id.* § 2301.606(c)(2) (providing Division may not order repurchase unless manufacturer has been given an opportunity to cure defect or nonconformity).

15

Dutchmen asserts that the ALJ made no findings of fact or conclusions of law on the issue of substantial impairment and that the only evidence introduced on the topic was Chamberlain's testimony that the trailer was repairable. Dutchmen suggests that Kennemer's failure to present an expert witness or any technical or market-based evidence that established impairment of value or use precluded the Division from concluding that the defects substantially impaired the trailer. In addition, Dutchmen argues that the Division's conclusion is functionally a finding of fact despite its title. Thus, Dutchmen contends, the Division improperly made its own factual finding instead of remanding the matter to the ALJ for a finding on substantial impairment after the Division concluded that Dutchmen had been given a reasonable opportunity to cure.

Contrary to Dutchmen's assertions, the ALJ made a finding of fact related to substantial impairment. He found that:

> [Kennemer] has experienced several problems with the trailer, including a water leak, an air conditioner problem, a carpet problem, a door that allows light to be seen around its edge, a damaged converter, loose tape, loose trim, enamel peeling, insufficient televison volume, a leaking sink gasket, a malfunctioning bathroom door, a loose screw on a mirror, a malfunctioning bathroom sink strainer, a crooked ceiling air conditioner fixture, discolored wood on the refrigerator door, and gaps in plywood.

Moreover, Kennemer testified at length on the various specific issues that he had with the trailer. He also testified that the trailer had been out of service for repair for more than 30 days and at least two repair attempts were made in the first twelve months he owned the trailer. He testified that he was seeking a refund because of his concern that even if the trailer was repaired, he still would have to disclose all the problems that he had with it if he tried to sell it. He also testified that because of the extent of the problems that he had encountered, he felt he "would still have problems with the

16

unit further down the road" and that he did not think that Dutchmen would ever find all the trailer's problems "without completely redoing the trailer." Dutchmen did not offer any evidence to contradict these points. Nor does Dutchmen contest any of the defects that the ALJ found to exist; instead, it focuses on their repairability and on the Division's purported inability to make its own factual finding.

We first address Dutchmen's contention that the Division improperly made a factual finding on substantial impairment. *See Davis*, 34 S.W.3d at 564 (holding education code did not authorize school board to make additional findings in addition to those made by hearing examiner). Dutchmen characterizes the Division's legal conclusion as being functionally a finding of fact. We disagree. As the court explained in *Davis*, the "ultimate decisions about whether a standard or policy has been met or breached can have the same effect as a conclusion of law or a mixed question of law and fact." *Id.* at 565 (citing cases discussing "ultimate findings" concerning compliance with statutory standards). Dutchmen is correct that the label attached to the finding or conclusion in question is not determinative—"the focus is on whether the issue determined is ultimately one of policy." *Id.* at 566. In this case, the Division retains the authority to make the ultimate decision of whether the facts demonstrate that the statutory standard for substantial impairment of value has been met. *See id.* at 565; *see also* Tex. Occ. Code Ann. § 2301.602; Tex. Gov't Code Ann. § 2001.058(e).

We now turn to the Division's interpretation of the statutory standard for substantial impairment. The statute defines "impairment of market value" as meaning "a substantial loss in market value caused by a defect specific to a motor vehicle." Tex. Occ. Code Ann. § 2301.601(1) (West 2012). The statutory standard provides only vague direction, and analyzing whether defects substantially impair the use or market value of a vehicle is an area in which there is "room for policy

17

determinations." *See TGS-NOPEC*, 340 S.W.3d at 438. Accordingly, we will review the Division's interpretation and uphold it if it is reasonable and consistent with the statute's plain language. *See id.* at 438.

The Division maintains that its conclusion that the problems that the ALJ found with the trailer substantially impair its value is consistent with its prior interpretation of the statutory standard, which is a reasonable-prospective-purchaser standard ("reasonable-purchaser standard"). *See Texas Citizens*, 336 S.W.3d at 625 (holding that reviewing courts' deference to agency's reasonable interpretation of ambiguous statute applies when that interpretation has been adopted in formal opinion after formal proceedings). The Division's reasonable-purchaser standard does not require an owner to present an expert witness or any technical or market-based evidence to show decreased value. In a prior order, the Director has explained that factfinders

> should put themselves in the position of a reasonable prospective purchaser of the subject vehicle and determine (based on the evidence presented) if the current condition of the vehicle would deter them from buying the vehicle or substantially negatively affect how much they would be willing to pay for the vehicle.

Texas Dep't of Transp., *Sherman v. Gulf Stream Coach, Inc., Final Order Granting Chapter 2301, Subchapter M Relief*, MVD Cause No. 08-0260 CAF, SOAH Docket No. 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.CAF at 1-2 (Motor Vehicle Div. Dec. 5, 2008). We find that this interpretation of the standard required for demonstrating substantial impairment is reasonable and consistent with the statute's plain language which requires a showing of loss in market value. *See TGS-NOPEC*, 340 S.W.3d at 438. Moreover, we find that the Division's interpretation that expert testimony or technical or market-based evidence

18

is not required to show diminished value or use is consistent with the statute's goal of mitigating manufacturers' economic advantages in warranty-related disputes. *See Chrysler*, 846 S.W.2d at 142.

We next consider whether substantial evidence supports the Division's conclusion that the trailer's value was substantially impaired. The statute establishes that the manufacturer may plead and prove as an affirmative defense that the alleged defects do not substantially impair the vehicle's use or market value. *Id.* § 2301.606(b)(2). Thus, the burden of proving *no* substantial impairment of use or value falls on Dutchmen. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) (concluding privilege of legal justification or excuse in interference of contractual relations is affirmative defense and thus defendant has burden of proof). Dutchmen focuses on the evidence it presented that all of the identified problems were repairable, but the ability to repair problems is not the standard the Division applies for judging impairment of value or use. Instead, as discussed above, it applies a reasonable-purchaser standard and considers whether a defect or nonconformity hampers the intended normal operation of the vehicle.

The example that the Division provided in the *Sherman* order was that while a vehicle with a non-functioning air conditioner would be available for use and transporting passengers, its intended normal use would be substantially impaired. SOAH Docket No. 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.CAF at 2. In this case, Kennemer testified that the air conditioner did not keep the trailer cool and that he had ongoing problems with the air conditioner, in addition to the multitude of other problems, including plumbing and electrical issues, some of which had been repaired and some of which had not. He was concerned both about having to disclose the extensive nature of the problems to a prospective purchaser and about the possibility that there remained undiscovered problems with the trailer. And

19

Chamberlain, Dutchmen's witness, testified that some of the issues he found during his January 2009 inspection "shouldn't have ever left the factory." The Division considered the evidence in the record and appropriately applied its reasonable-purchaser standard to the facts when reaching its conclusion that the trailer's value was substantially impaired. We find that the Division's order is supported by substantial evidence. We overrule Dutchmen's second issue.

**CONCLUSION**

Having overruled both of Dutchmen's issues on appeal, we affirm the district court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson
  Concurring Opinion by Justice Pemberton

Affirmed

Filed:   August 17, 2012

20