# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00584-CV

**Don Madden, Appellant**

**v.**

**State Board for Educator Certification, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-10-003843, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State Board for Educator Certification issued an unpublished censure to former school principal Don Madden's Texas Educator Certificate after determining that he violated the Texas Educators' Code of Ethics by using an improper amount of force to administer corporal punishment to J.S., a student. The district court affirmed the Board's order. Madden appeals, asserting that the Board's final order, which amended an underlying proposal for decision put forth by an administrative law judge, did not provide an adequate explanation for departing from the ALJ's proposal. Madden also asserts that the Board lacked authority to sanction him in light of a statutory exception from professional sanctions for an educator's justifiable use of corporal punishment. We will affirm the district court's judgment.

**BACKGROUND**

Don Madden was a high school principal with the Cumby Independent School District in northeast Texas.[1]  Like many Texas school districts, Cumby ISD permits the use of corporal punishment of students in certain situations.  The district policy limits corporal punishment to spanking or paddling that is "reasonable and moderate" and is not administered maliciously or for revenge.  The policy further requires that before administering corporal punishment, the educator must consider factors such as the student's size, age, and condition; the type of instrument to be used; the amount of force to be used; and the part of the body to be struck.  The policy also incorporates a Texas Penal Code standard on the proper use of force, stating that an educator's use of force against a student is justified "when and to the degree the teacher or administrator reasonably believes the force is necessary to further the purpose of education or to maintain discipline in a group." *See* Tex. Penal Code § 9.62.

Madden administered corporal punishment for two separate disciplinary infractions to seventh-grade student J.S., giving him two "swats" on his buttocks with a wooden paddle.  J.S. was a slightly built twelve-year old and was wearing gym shorts when the swats were administered. It is undisputed that J.S. had an extensive history of poor behavior at school and had received corporal punishment several times before this incident, including swats from Madden.  On this occasion, Madden was preparing to send J.S. to in-school suspension that would be followed by alternative school; however, J.S.'s father called to state his preference that J.S. receive corporal punishment.

---

[1]  Cumby High School is composed of students from seventh through twelfth grade.

After Madden administered the swats, J.S. developed large red marks and bruising on his buttocks. When he got home from school that afternoon, J.S. reported to his mother that he was in pain, and she took J.S. to the emergency room. The emergency room staff noted "moderate to severe" early bruising on J.S.'s buttocks that was pink, red, and purple. Emergency room staff notified Child Protective Services of the incident and instructed J.S. to take over-the-counter pain medication and soaks in cool water. An emergency room record notes that J.S.'s mother reported the incident to police, who took photos of J.S.'s bruises. Four days later, J.S. followed-up with his family doctor, who noted yellow and brown bruises on J.S.'s buttocks that were healing. About the same time, J.S.'s mother took photos of bruises on J.S.'s buttocks.[2] The photos taken by police and J.S.'s mother depict the progression of J.S.'s condition from the day of the swats until four days later.

The State Board for Educator Certification, which is charged with regulating and overseeing all aspects of public-school educators' standards of conduct, subsequently filed a disciplinary action alleging that Madden violated the Texas Educators' Code of Ethics and requesting that his Texas Educator Certificate be suspended for one year. The matter proceeded to a contested-case hearing during which a number of witnesses were called before an administrative law judge at the State Office of Administrative Hearings.

Dr. Annette B. Horne, J.S.'s family doctor, testified at the hearing by deposition. She stated that she saw J.S. for an examination and documentation of injuries four days after he was paddled at school. Horne reviewed J.S.'s medical records and noted that he had not previously

---

[2] A pair of photos showing J.S.'s healing bruises have date stamps indicating that they were taken four days after the incident.

3

been diagnosed with any bruising or bleeding disorder. Based on the extent of J.S.'s injuries, Horne opined that "excessive force" was used on J.S.

Dr. Matthew Cox, an expert who works with Child Protective Services, was next to testify by deposition. Cox is the Medical Director of a child-abuse assessment program at Children's Medical Center in Dallas and an Assistant Professor of Pediatrics at the University of Texas Southwestern Medical School. CPS asked Cox to consult on J.S.'s case by assessing J.S.'s injuries as depicted in photos and determining how much force it would take to inflict those injuries. Cox replied that he could not quantify the exact amount of force used, but according to the American Academy of Pediatrics, non-accidental traumas leading to skin abnormality for more than 24 hours are "abusive injuries." Cox opined that "reasonable physical discipline does not cause this extent of bruising that lasts several days." After reviewing the photos CPS provided, Cox reviewed J.S.'s medical records.[3] Cox noted that in another case he declined to make a finding of abuse because the injured child had an underlying bleeding problem, but here Cox was able to rule out that possibility. Cox testified that he saw significant bruising to J.S.'s buttocks, more on the right than on the left, in a pattern consistent with the relayed history of being struck with a wooden paddle. Cox further testified that J.S.'s degree of bruising was "severe" and that injuries of this severity "are consistent with child physical abuse."

Martin Braddy, the Hopkins County District Attorney, also testified by deposition. Braddy described the process through which he concluded, by criminal prosecution standards, that J.S.'s corporal punishment was administered reasonably and that Madden should not be

_____

[3] About a year after the incident, Cox also evaluated J.S. at the clinic.

4

prosecuted. In deciding whether to charge Madden with assault or injury to a child, Braddy reviewed photographs of J.S.'s buttocks and discussed this case with J.S.'s parents, the Cumby police officer who conducted an investigation, and CPS staff. Braddy did not speak with any medical personnel. Braddy opined that Madden had "no culpable mental state" or intent to commit a crime against a child but only an intent to discipline. Braddy also noted that the corporal punishment was administered to an appropriate part of J.S.'s body, i.e., his buttocks, and that the bruising that appeared to be the result of paddling was in the expected place. Braddy acknowledged that he considers only the Penal Code, not the Education Code, in deciding whether to prosecute criminal cases and stated that under his understanding of section 9.62 of the Penal Code, a person who is responsible for maintaining discipline at school may use reasonable force against a student to maintain and enforce discipline.

CPS investigator Joe Richard Teer, a certified police officer, appeared at the hearing to describe CPS's involvement in the case. He testified that he interviewed "everybody involved" regarding J.S.'s allegations of physical abuse. He said CPS found "reason to believe" that physical abuse had occurred "because [J.S.] was injured and Mr. Madden caused those injuries." Teer acknowledged that CPS uses a standard from the Family Code to determine what constitutes child abuse. He stated that he had previously investigated another, unrelated case of corporal punishment resulting in bruising and that CPS found there was child abuse in that case as well because of the bruising. He concluded that whether Madden reasonably believed that the force he used was necessary to discipline J.S. did not matter when applying the CPS standard of determining whether child abuse occurred.

5

Claudette Caldwell, an administrative assistant at Cumby ISD who witnessed J.S.'s swats, testified by telephone. She recalled that J.S. did not want the swats, so Madden called J.S.'s father, who called back and consented. Caldwell said that Madden did not seem angry and did not appear to hit J.S. harder than he had any other student. She did not recall J.S. crying. Caldwell stated that if she had seen Madden do something inappropriate or excessive, she would say so.

Madden appeared at the hearing and testified that he had been a principal with Cumby ISD for five years. He stated that the school district's policy allows corporal punishment by paddling and requires that it be "reasonable and moderate." Madden also stated that he administered corporal punishment to J.S. on the occasion at issue and other instances beforehand. J.S.'s complaint was the first time anyone had ever complained about Madden's use of corporal punishment. When J.S. first arrived at the school office on the day in question, Madden talked to him about his disciplinary infractions, and J.S. told Madden that he did not want swats. Madden called J.S.'s father but got no answer, so Madden decided to send J.S. to in-school suspension and thereafter to alternative school. J.S.'s father called back shortly afterward and told Madden to administer the swats to J.S. Madden denied being upset with J.S. when he administered the swats, but Madden could tell that J.S. was angry when he left. Madden said J.S. did not cry and did not appear to be crying in a security video that showed him as he left the school office. Teachers told Madden that J.S. actively participated in athletics later that afternoon, and Madden was unaware of J.S. making any complaint of injury to the staff. Madden testified that the force he used in administering the punishment that day was the force he believed was necessary, and he denied using force that was any different from the force he had used at other times in administering swats. He also testified that he had seen photographs of J.S.'s injuries but did not know for certain that he caused those injuries.

J.S. also testified at the hearing. He acknowledged that he had discipline problems since he began school at Cumby ISD, receiving detentions, in-school suspensions, alternative-school placement, and swats, including swats from Madden on three or four occasions. J.S. denied any injury or bruising from swats on those prior occasions. On the day in question, Madden explained to J.S. why he was in trouble, had Mrs. Caldwell come into the office as a witness, and gave J.S. the swats. J.S. said he felt "a lot of pain" after the first swat and asked for a minute to rest. After a break, Madden gave J.S. the second swat, which felt "just like the first one." J.S. went from the office to the restroom, where he testified that he waited for thirty minutes for class to end because he did not want his classmates to see him crying. J.S. then went to his last class, physical education, but testified that he did not participate because of his pain. He walked home after school and waited for his mother, who took him to the emergency room. J.S. agreed that photographs of his buttocks accurately depicted his bruising. He testified that at first he "felt like his bottom was on fire" and sitting was painful. A few days later the pain remained, but he could sit.

After the contested-case hearing, the ALJ issued a proposal for decision with findings of fact and conclusions of law. The ALJ found, based on the doctors' opinions, that J.S. sustained moderate to severe bruising on his buttocks, that the bruising was a physically abusive injury resulting from the use of excessive force, and that the bruising remained for one week.[4] Consequently, the ALJ concluded that Madden violated standards 3.2 and 3.5 of the Texas Educators' Code of Ethics by knowingly treating a student in a manner that adversely affected the

---

[4] Madden did not challenge the ALJ's fact findings, which are supported by the record and adopted in the Board's final order, and which this Court accepts as established. *See Helbing v. Texas Dep't of Water Res.*, 713 S.W.2d 134, 137 (Tex. App.—Austin 1986, no writ) (accepting agency's unchallenged finding of fact as established on appeal).

student's learning, physical health, mental health, or safety and by physically mistreating a student. *See* 19 Tex. Admin. Code § 247.2(3)(B), (E) (State Bd. for Educator Certification).[5]  Nevertheless, the ALJ determined that under section 22.0512 of the Education Code—specifically, the "subjective nature" of the standard on the proper use of force—Madden could not be sanctioned because he "reasonably believed" the force used was necessary to maintain discipline.  *See* Tex. Educ. Code § 22.0512(a); Tex. Penal Code § 9.62.

When the Board subsequently issued its final order, it amended one of the ALJ's findings of fact and two of his conclusions of law as being contrary to the Board's policy of regulating educator conduct in a manner that protects the safety and welfare of Texas schoolchildren and contrary to the Board's policy of disciplining educators who violate the Educators' Code of Ethics.  The Board ultimately rejected the ALJ's determination that Madden could not be sanctioned because he professed a subjectively reasonable belief that his use of force was necessary, deciding instead to issue a "non-inscribed reprimand," a formal but unpublished censure that does not appear on the educator's certificate.  *See* 19 Tex. Admin. Code § 249.3(45)(B) (State Bd. for Educator Certification, Definitions).  A non-inscribed reprimand is the least serious sanction the Board can impose.[6]  It does not, according to the Board, affect the validity of the educator's certificate, and it

---

[5]  We cite to the current version of the Texas Administrative Code because the sections pertinent to this appeal were not changed substantively when they were amended and renumbered.

[6]  The Board may take any of the following disciplinary actions against an educator:

(1) place restrictions on the issuance, renewal, or holding of a certificate, either indefinitely or for a set term;

(2) issue an inscribed or non-inscribed reprimand;

8

is accessible to others only by open records request or the educator's own admission. The Board's final order issued the non-inscribed reprimand. Madden appealed the Board's final order to the district court, and the court affirmed the Board's decision. This appeal followed.

## DISCUSSION

**Madden's challenges to the Board's final order**

In his first issue, Madden contends that the Board's final order failed to provide an adequate explanation for the Board's amendments to one finding of fact and two conclusions of law in the ALJ's proposal for decision. In Madden's view, the Board had to explain how the same evidence that the ALJ used to find Madden's use of force was justified could be used by the Board to determine that Madden's use of force was not justified. Madden complains specifically about the following changes made by the Board's final order:

(1)     amending the ALJ's finding of fact that Madden "reasonably believed" the force he used in administering punishment to a student was necessary to maintain discipline, and finding instead that Madden's belief that he used a necessary degree of force was not reasonable;

---

(3) suspend a certificate for a set term or issue a probated suspension for a set term;

(4) revoke or cancel, which includes accepting the surrender of, a certificate without opportunity for reapplication for a set term or permanently; or

(5) impose any additional conditions or restrictions upon a certificate that the Board deems necessary to facilitate the rehabilitation and professional development of the educator or to protect students, parents of students, school personnel, or school officials.

19 Tex. Admin. Code § 249.15(a) (State Bd. for Educator Certification, Disciplinary Action by State Bd. for Educator Certification).

(2)     amending the ALJ's conclusion of law that under section 22.0512 of the Texas Education Code, Madden may not be subject to disciplinary proceedings for his use of physical force against the student if his use of force was justified under section 9.62 of the Texas Penal Code, and concluding instead that Madden may be disciplined because he violated the Educators' Code of Ethics and because his use of force exceeded the scope justified under the Penal Code; and

(3)     amending the ALJ's conclusion of law that under section 9.62 of the Penal Code, Madden's use of force was justified by his reasonable belief that the force was necessary to maintain discipline, and concluding instead that Madden's use of force was not justified under the Penal Code because the force used was not reasonable and of the degree necessary under the circumstances.

The Board responds that its amendments to the ALJ's proposal were proper and necessary because the finding and the conclusions were improper applications or interpretations of the Board's policies, set forth in the Board's rules, of regulating educator conduct in a manner that protects the safety and welfare of Texas schoolchildren and of disciplining educators who violate the Educators' Code of Ethics. *See* Tex. Educ. Code § 21.031(a) (charging State Board for Educator Certification with regulating and overseeing all aspects of standards of conduct for public school educators); 19 Tex. Admin. Code § 249.5(a)(1), (5) (State Bd. for Educator Certification; Purpose, Policy Governing Disciplinary Proceedings) (noting that among purposes of disciplinary proceedings and sanctions is enforcement of Educators' Code of Ethics and protection of safety and welfare of Texas schoolchildren); *see also* Tex. Gov't Code § 2001.003(6)(A)(i) (recognizing that rule may implement, interpret, or describe state agency's policy).

The Texas Government Code authorizes an agency to change findings of fact and conclusions of law in a proposal for decision if the agency determines that the ALJ did not properly apply or interpret applicable law, agency rules, written policies, or prior administrative decisions. *See* Tex. Gov't Code § 2001.058(e)(1). When such changes are made, section 2001.058(e) of the

10

Government Code requires the agency to provide a written statement of the specific reason and legal basis for such changes. *See id*. § 2001.058(e). Thus, resolution of Madden's first issue requires us to decide whether the amendments that the Board made to the proposal for decision were adequately explained in its final order. We conclude that they were.

**The Board's final order adequately explains amendments to the ALJ's proposal for decision**

Fairly summarized, the Board's three amendments to the proposal for decision stated that: (1) Madden's belief that he used a necessary degree of force was not reasonable under the circumstances; (2) Madden may be disciplined because he violated the Educators' Code of Ethics and because his use of force exceeded the scope justified under the Penal Code; and (3) Madden's use of force was not justified under the Penal Code because the force used was not reasonable and of the degree necessary under the circumstances. Madden complains that the Board's final order did not provide an adequate explanation for these amendments. We disagree. All of the Board's amendments were adequately explained in the Board's final order, which provided specific reasons and legal bases for the changes, including that the ALJ's decision was inconsistent with the Board's policies of regulating educator conduct in a manner that protects the safety and welfare of Texas schoolchildren and of disciplining educators who violate the Educators' Code of Ethics. *See id*.

The Board's final order provided specific reasons and a legal basis for the Board's amendment of the ALJ's finding of fact. As noted above, the ALJ found that Madden "reasonably believed the force he used" on J.S. "was necessary to maintain discipline." The Board's final order stated that this finding is inconsistent with the Board's "purpose and policy to safeguard the safety and welfare of the child." *See* 19 Tex. Admin. Code § 249.5(a)(1), (5); *see also* Tex. Gov't

Code § 2001.003(6)(A)(i). Thus, the Board amended the ALJ's finding of fact to state that it was "not reasonable under the circumstances" for Madden to believe that the degree of force used in administering punishment to J.S. was necessary. In support of this amended finding, the Board's order relies on the evidence showing the severity of J.S.'s injuries (documented in the record with photographs of his buttocks taken on the day of the paddling and approximately one week later), the doctors' opinions (concluding that J.S. sustained significant bruising, caused by excessive force, which was "consistent with child physical abuse" based on the severity of the injuries that lasted for several days afterwards), and the ALJ's determination that Madden violated Standards 3.2 and 3.5 of the Educators' Code of Ethics by "*knowingly* treating a student in a manner that adversely affected the student's learning, physical health, mental health, or safety" and by "physical[ly] mistreating a student."[7] *See* 19 Tex. Admin. Code § 247.2(3)(B), (E) (emphasis added).

The Board's final order similarly provided specific reasons and a legal basis for the amendment of two of the ALJ's conclusions of law. Whereas the ALJ concluded that Madden was exempt from disciplinary proceedings and that his use of force was justified, the Board's final order explained that such conclusions were inconsistent with the Board's policy "to safeguard the safety and welfare of the child," the Board's policy "to discipline educators who violate the Educators' Code of Ethics," and the ALJ's other conclusions that Madden violated Standard 3.2 and 3.5 of the Educators' Code of Ethics. *See id*. § 247.2(3)(B), (E). In amending these legal conclusions, the Board relied on the Educators' Code of Ethics set forth in the Board's rules and the ALJ's

---

[7] Madden did not challenge the ALJ's legal conclusions that he violated the Educators' Code of Ethics, and these conclusions were adopted in the Board's final order. The absence of such challenge waives any complaint about these conclusions on appeal. *See* Tex. R. App. P. 33.1(a).

unchallenged fact findings addressing the severity of J.S.'s injuries and the doctors' opinions about the degree of force that would cause those injuries. *See id*. § 247.2(3)(B), (E).

Because the Board's final order complied with section 2001.058(e) of the Government Code by providing sufficient explanation of the specific reasons and legal bases for the Board's amendments to each finding and conclusion, the district court did not err in affirming the Board's final order. *See* Tex. Gov't Code § 2001.058(e). We overrule Madden's first issue.

**The Board's authority to sanction Madden**

Madden's second issue asserts that the district court erred in sustaining the Board's sanction because he was entitled to a statutory exemption from professional sanctions that applies to an educator's justifiable use of corporal punishment. Specifically, Madden argues that the exemption in section 22.0512 of the Education Code applies and, as a result, the Board lacked authority to issue the non-inscribed reprimand against him.

Our review of the Board's order is governed by section 2001.174 of the Government Code, which instructs us to reverse and remand this case if Madden's substantial rights have been violated because the Board's findings, inferences, conclusions, or decisions are, among other matters, in violation of a constitutional or statutory provision, in excess of the Board's statutory authority, or affected by other error of law. *See id.* § 2001.174(2). However, Madden's argument here—that he was entitled to the exemption from sanctions in section 22.0512(a) of the Education Code because his use of corporal punishment was justified under the plain language of the exemption—presents a pure question of statutory construction.

13

We review questions of statutory construction de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). In construing a statute, our primary objective is to give effect to the legislature's intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We determine legislative intent from the plain meaning of the words chosen when possible to do so, using any definitions provided. *See id.*; *see also* Tex. Gov't Code § 311.011. We consider the statutes as a whole rather than their isolated provisions. *TGS–NOPEC*, 340 S.W.3d at 439. Further, we presume that the Legislature chooses a statute's language with care, purposefully choosing each word it includes and purposefully omitting words not chosen. *Id*. When an agency is charged with enforcing a particular statute and the statute is ambiguous, we will give serious consideration to the agency's interpretation. *See Texas Citizens*, 336 S.W.3d at 624-25. But when, as here, a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *See TGS–NOPEC*, 340 S.W.3d at 439; *see also Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (noting that agency's reasonable interpretation of a statute is granted deference, but a precondition to agency deference is ambiguity). Applying this standard, we conclude the Board's determinations that (1) Madden's use of force against J.S. was not justified under the Penal Code and (2) Madden was not exempt from discipline under the Education Code are supported by the plain language of the governing statutes and do not lead to absurd results. *See TGS–NOPEC*, 340 S.W.3d at 439; *see also* Tex. Educ. Code § 22.0512(a); Tex. Penal Code § 9.62.

The Legislature has given the Board authority under section 21.041 of the Education Code to enforce the Educators' Code of Ethics and establish proceedings for educator discipline. *See* Tex. Educ. Code § 21.041(b)(7), (8). The Education Code also provides an exemption from

14

disciplinary proceedings for an educator's justified use of corporal punishment. *See id.* § 22.0512(a).

Section 22.0512(a) of the Education Code states:

> A professional employee of a school district may not be subject to disciplinary proceedings for the employee's use of physical force against a student to the extent justified under Section 9.62, Penal Code.

*Id.* This statute does not, however, prohibit a school district from enforcing a policy relating to corporal punishment or bringing a disciplinary proceeding against a professional employee of the district who violates the district policy relating to corporal punishment. *Id.* § 22.0512(c). Section 22.0512 of the Education Code incorporates a Penal Code standard on the proper use of force, which states:

> The use of force, but not deadly force, against a person is justified: (1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and (2) when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group.

Tex. Penal Code § 9.62.

Madden contends that under section 9.62 of the Penal Code, concern about the effect of the paddling on the student "ends . . . with a determination that the force used was not 'deadly'" and that the statute "does not concern itself with the effects [of the use of force] beyond simple survival." The Board responds that it properly exercised its authority to issue the non-inscribed reprimand based on its determinations that (1) Madden's belief that he used a necessary degree of force was not reasonable under the circumstances and (2) such use of force was not justified. The Board also points to its determination that the degree of force used by Madden was inconsistent with

15

the Board's policy of enforcing the Educators' Code of Ethics in a manner that protects the safety and welfare of Texas schoolchildren. *See* 19 Tex. Admin. Code § 249.5(a)(1), (5). In the Board's view, because Madden's use of force was not justified under the Penal Code, he was not exempt from discipline under the Education Code.

Texas law clearly allows educators to use reasonable force to discipline their students. *See Burton v. Kirby*, 775 S.W.2d 834, 836 (Tex. App.—Austin 1989, no writ); *Hogenson v. Williams*, 542 S.W.2d 456, 459 (Tex. Civ. App.—Texarkana 1976, no writ); *see also Spacek v. Charles*, 928 S.W.2d 88, 93 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd w.o.j.) (noting that "[c]orporal punishment is but one form of discipline that the common law sanctions, provided that teachers impose reasonable, but not excessive force in disciplining a child"). Use of such force is consistent with the public policy of Texas to give educators the necessary support to enable them to efficiently discharge their responsibilities. *Hogenson*, 542 S.W.2d at 460. However, we reject Madden's argument that an educator is wholly exempt from even the least serious Board sanctions if he professes a subjectively reasonable belief that his use of force was necessary and the force applied was not deadly.

"Reasonable belief," as used in section 9.62 of the Penal Code, involves an objective—not subjective—standard defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code § 1.07(42); *see also Dill v. State*, No. 04-10-00419-CR, 2011 Tex. App. LEXIS 6497, at *9 (Tex. App.—San Antonio Aug. 17, 2011, pet. ref'd) (mem. op., not designated for publication) (noting, under similar section of Penal Code addressing corporal punishment administered by parents, that "use of force under section 9.61 is not justified simply because of a parent's subjective belief that the force is

16

necessary; rather, the use of force is justified only if a reasonable person would have believed the force was necessary to discipline the child or to safeguard or promote the child's welfare"). This objective standard supports the Board's determination that Madden's use of force was not justified under section 9.62 because an ordinary and prudent person would not have believed that the use of this amount of force, resulting in the bruising shown in this record, was "necessary . . . to maintain discipline," i.e., as punishment for J.S.'s conduct. *See* Tex. Penal Code § 9.62; *Hogenson*, 542 S.W.2d at 459-60 (construing section 9.62 of Penal Code to require that educator's "use of force or physical contact must be reasonable and not disproportionate to the activity or the offense"). The plain language of the Education Code's exemption from disciplinary proceedings for the use of physical force against a student applies "only to the extent justified" under section 9.62 of the Penal Code, which in turn incorporates an objective standard of reasonableness in assessing the actor's belief that the force used is necessary. *See* Tex. Educ. Code § 22.0512(a); Tex. Penal Code §§ 1.07(42), 9.62. To the extent the ALJ relied on a *subjective* standard of reasonableness to conclude that Madden's use of force was justified, the conclusion was legally incorrect.

Madden argues that the Board's imposition of sanctions here does not account for "unforeseen consequences" arising from the corporal punishment of a student. While the Court is sympathetic to this uncertainty, state law charges the Board with overseeing public-school educators' standards of conduct to protect Texas students, and we cannot say that the Board's imposition of an unpublished censure, the least serious sanction available, was an absurd result given the plain language of section 22.0512(a) of the Education Code and its objective standard for determining whether and to what degree the use of force is justified. *See* Tex. Educ. Code § 22.0512(a); Tex. Penal Code §§ 1.07 (42), 9.62; 19 Tex. Admin. Code § 249.15(a) (range of sanctions). As this

17

Court has stated, an educator must use professional judgment in determining the appropriate force to be used in the administration of corporal punishment, and if the educator is unable to make that determination, he may choose to administer another form of discipline. *Burton*, 775 S.W.2d at 836 (rejecting argument that educators would be unable to determine whether they were using unreasonable force in administering punishment); *see also* Tex. Att'y Gen. Op. No. GA-0202 (2004) (defining corporal punishment generally as infliction of "bodily pain" as consequence for inappropriate behavior but making no reference to physical injury).

We conclude that the plain language of the disciplinary exemption in section 22.0512(a) of the Education Code did not deprive the Board of authority to impose the non-inscribed reprimand—its least serious sanction—against Madden. As such, the district court did not err in affirming the Board's sanction. We overrule Madden's second issue.

## CONCLUSION

Having overruled both of Madden's issues, we affirm the district court's judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: May 22, 2014